UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YOLANDA POZO,

                    Plaintiff,                    06 CV 2004 (RCC)(AJP)

        -against-                        **FIRST AMENDED**
                                                  **COMPLAINT**

J & J HOTEL COMPANY L.L.C., MR.
ENDERMAN, HOTEL RIVERSIDE STUDIOS,
GUSIF J. KHAN, LOCAL 758, HOTEL AND
ALLIED SERVICES UNION, SEIU, AFL-CIO,

                    Defendants.
------------------------------------------------------------X

       Plaintiff Yolanda Pozo, by her attorney, Joshua F. Nessen, Esq., alleges upon knowledge

as to herself and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

       1.      This action is commenced by Plaintiff pursuant to 29 U.S.C. § 185 as a hybrid

claim of breach of contract against J & J Hotel Company L.L.C. ("J & J Hotel"), its general

manager, Mr. Enderman ("Enderman"), Hotel Riverside Studios ("Riverside") owned by J & J

Hotel, and its manager Gusif J. Khan ("Khan")(collectively the "Hotel Defendants"), and for

breach of the duty of fair representation against her collective bargaining representative, Local

758, Hotel & Allied Services Union, SEIU, AFL-CIO ("Local 758 SEIU" or "the union").

       2.      Plaintiff has worked at Riverside from August 13, 2001 to present. For the

majority of the time that Plaintiff has worked at Riverside, J & J Hotel and Riverside, acting

through their managers, refused to honor the following contractual obligations to Plaintiff

mandated by the Collective Bargaining Agreement ("the Agreement") with the union to: a) pay

her the rate for a "room attendant" established by the Agreement;  b) pay her the yearly pay

raises mandated by the Agreement; c) pay her for the supplementary $8 per room charge for a

room attendant beyond her normal complement of 28 bathrooms and 15 bedrooms per 7-hour shift; and d) pay her for doing laundry work, a task which is a separate job classification under the Agreement, and e) pay her augmented hourly wages for weekend work at time and one-quarter pay. This action seeks first of all to obtain the funds owed to Plaintiff by J&J Hotel and Riverside. Plaintiff also seeks injunctive relief to forbid the Hotel Defendants from assigning her to do laundry work at any time as a violation of the Agreement.

3.      Despite numerous efforts to obtain assistance from Defendant Local 758 SEIU to enforce these contractual rights, the union steadfastly ignored Plaintiff's complaints for over two years and breached its duty of fair representation to pressure her employer to honor its obligations.  Even after pressure from Plaintiff (which included filing a charge with the National Labor Relations Board against the union) forced the Union to belatedly go to arbitration against the Hotel in December 2004, union officials refused to communicate at all with Plaintiff about the status of the thousands of dollars in back pay still owed her by the Hotel Defendants. Plaintiff seeks damages against the union for its failure to properly represent her interests under the Agreement. In addition, Plaintiff also seeks damages against the union for its failure to properly represent her in pursuing her complaints of discrimination against the Hotel Defendants.

4.      Plaintiff also brings this action under the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Executive Law § 290 *et. seq.* (the "State Law") and the Administrative Code of the City of New York § 8-107 *et. seq.* (the "City Law") to enjoin ongoing discrimination by her employer, J & J Hotel, its general manager Enderman, Hotel Riverside Studios, and its manager Khan, (collectively the "Hotel Defendants"), on the basis of Plaintiff's religion, national origin, race and age.  The injunctive action would include,

but would not be limited to, an order banning the assignment of any weekend work to Plaintiff, who has already endured four years without attendance at her Catholic Parish.  This action also seeks to compensate plaintiff monetarily for the effects of discriminatory treatment by the Hotel Defendants, including failure to reasonably accommodate her religion and workplace harassment, to which she has been subjected since 2002.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction to enforce collective bargaining agreements under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the union's duty of fair representation to Plaintiff is implied under the scheme of the LRMA, 29 U.S.C. § 151 *et. seq.*

6.      This Court also has subject matter jurisdiction of Plaintiff's claims of discrimination pursuant to the special venue statute of Title VII, 42 U.S.C. § 2000e-5(f)(3) *et. seq.*, 42 U.S.C. § 1981, and 28 U.S.C. § 1331.  Supplemental jurisdiction over Plaintiff's state and city law claims is conferred by 28 U.S.C. § 1367(a).

7.      Venue in the Southern District is proper under 28 U.S.C. 1391(b) and (c) because Defendants J & J Hotel Company L.L.C., Hotel Riverside Studios, and Local Union 758 SEIU reside in Manhattan pursuant to 29 U.S.C. § 185(c), and that is the location where the unlawful employment practices were committed.

8.      Prior to filing this Amended Complaint, Plaintiff served a copy of it upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Administrative Code § 8-502(c).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      On or about July 15, 2005, Plaintiff filed a Charge of Discrimination against Defendants with the New York District Office of the Equal Employment Opportunity Commission ("EEOC").

10.     Plaintiff charged Defendants with unlawful discrimination on the basis of her religion, national origin, race, color, and gender, as well as deprivation of her rights under the Collective Bargaining Agreement, and the failure of the union to assist her.  (Charge Numbers 160-2005-02085, and 160-2005-03441).   The EEOC Charge that Plaintiff herself wrote out in Spanish showed that Plaintiff checked boxes covering each of those categories.

11.     On or about December 1, 2005, Plaintiff received notice dated November 29, 2005 from the EEOC, informing her of her right to file a civil action.

12.     The claims for discrimination arising under Title VII were timely filed on or about January 9, 2006 within 90 days of Plaintiff's receipt of the EEOC's right-to-sue notice.

## PARTIES

13.     Plaintiff Yolanda Pozo ("Plaintiff") is a 61-year old Black female, born in Cuba, and a practicing Catholic.  She is married and resides at 178 Freeborn Street, Staten Island, New York 10306.  She has limited English proficiency.

14.     Defendant J & J Hotel Company L.L.C. ("J & J Hotel") is, upon information and belief, a limited liability corporation existing under New York State Law with its mailing address at 342/346/350 West 71st Street, New York, NY 10023 and address for service of process at 342 West 71st Street, New York, NY 10023.  Upon information and belief its primary business location is 350 West 71st Street, New York, New York 10023.   At all times relevant hereto, upon information and belief J & J Hotel owned Hotel Riverside Studios.

4

15.     Upon information and belief, Defendant Enderman is the general manager of J & J Hotel, and at all times relevant hereto had responsibility for overseeing the operations of its hotel properties in New York City, including Hotel Riverside Studios.

16.     Defendant Hotel Riverside Studios is a hotel with long and short-term residents located at 342 West 71st Street, New York, New York 10023 and, upon information and belief, is owned by J & J Hotel.

17.     Defendant Gusif J. Khan is the manager of Hotel Riverside Studios, and upon information and belief reports to his superior, Mr. Enderman.

18.     Defendant Local 758 SEIU is a service union representing approximately 2,700 hotel and motel workers in New York City.   Its principal place of business is 330 West 42nd Street New York, New York 10036.

## FACTUAL ALLEGATIONS

*The Initial Terms of Plaintiff's Employment*

19.     Plaintiff Yolando Pozo began work at Riverside on August 13, 2001.   Since then she has always performed her work diligently and professionally.

20.     When Plaintiff was first hired she was told by Defendant Khan, Riverside's Manager, that her job would be to clean rooms and bathrooms.  Khan told her that the amount of bathrooms would be 28 per shift, and the amount of bedrooms would vary depending on the number of guests at the hotel.  During the first five months, she averaged approximately fifteen bedrooms per shift, and cleaned the 28 bathrooms as agreed. In the hotel, bathrooms are located separately from the bedrooms.

21.     From August 2001 until January 2002, Plaintiff worked seven hours per day, five days per week, from Monday through Friday, 8:00am-4:00pm with an hour off for lunch. She performed no laundry work during this time.

22.     All of Plaintff's paychecks were issued by J & J Hotel Company and signed by Mr. Enderman on Tuesdays.  They were then distributed to Plaintiff and other employees at 12:30pm every Wednesday at the front desk of Riverside.  Plaintiff and the others would then endorse the checks and give them back to the front desk employee, who would pay them the equivalent in cash.  This practice has persisted throughout Plaintiff's employment at Riverside.

23.     Upon information and belief, J & J Hotel and Riverside are members of the Associated Hotels and Motels of Greater New York, which is the other party to the Collective Bargaining Agreement with Local 758 SEIU which was signed and went into effect on July 1, 2001 and runs until June 30, 2007.

24.     Pursuant to that agreement, Local 758 SEIU is the exclusive bargaining agent for all non-management employees of J & J Hotel and Riverside. All such employees are automatically covered by the Collective Bargaining Agreement once they begin work at Riverside.

25.     Plaintiff's responsibilities during August 2001-January 2002 placed her in the job category of "room attendant" specified in the Agreement.  Since Plaintiff was hired after the effective date of the Agreement (July 1, 2001), for the first year of her employment at Riverside (until August 13, 2002), J & J Hotel was obligated to pay her at 75% of the minimum rate for her job classification as room attendant.  This amounted to $431 for a full 35-hour work week, based on the $574.68 minimum rate given in the Agreement for the year beginning July 1, 2001.

26.      During August 2001-January 2002, Plaintiff always worked the full 35-hour week.  Yet she received less than the mandated gross base weekly rate of $431 every pay period. Some weeks she would receive $400 in gross pay (before deductions), while other weeks she would receive only $320 gross pay, despite working the same 35 hour work week.  When she complained to Khan about these differing payments, he told her that it was none of her business but was up to the company.

*Plaintiff Assigned to Work Weekends and Do Laundry (January-July 2002)*

27.      On or about January 7, 2002, Defendant Khan asked Plaintiff to do him a favor. He asked her to temporarily work Saturdays and Sundays, while continuing to work Mondays, Tuesdays and Wednesdays.  She agreed to this temporary arrangement.

28.      During the weekend shift, Khan ordered Plaintiff to clean 56 bathrooms during every 7-hour shift—a two-fold increase over her normal complement of rooms.  She also was assigned to clean more than her normal complement of 15 bedrooms, sometimes as many as 25 in a single shift.  Moreover, Plaintiff was given the additional task of doing all the laundry from the bedrooms and bathrooms she cleaned during those weekend shifts, even though this task was beyond her originally agreed upon responsibilities, and fell under a different job classification under the Agreement.

29.      After several months Plaintiff complained to Defendant Khan that the weekend work was not temporary, was keeping her from attending church, and was excessive.   He responded that she should leave the job if she would not do what she was told.

30.      The Hotel Defendants were also violating the Agreement by not compensating Plaintiff at $8 per extra room, for the work she was doing each weekend beyond the regular 28 complement of bathrooms (she was doing 56) and 15 bedrooms (she was cleansing 20-25).   The

Agreement does not differentiate between a "bathroom" and "bedroom", and thus Plaintiff should be compensated at the $8 per extra room rate for any type of "room".

31.     In addition, the Hotel Defendants were violating the Agreement by not paying Plaintiff for the onerous work of cleaning the laundry from each bathroom and bedroom she was assigned.  As a separate job category, a laundry employee hired in August 2001 would earn a gross base salary of $429 weekly between August 2001-August 2002.

32.     Despite this intolerable situation, Plaintiff could not afford to quit work at Riverside, especially since her husband has heart problems and could not work at all.

*Failure to Pay Plaintiff At Rate Given by Collective Bargaining Agreement*
*(August 2002-August 2003)*

33.     As of August 13, 2002, Plaintiff had worked a year as a room attendant and under the Agreement should have been receiving the full minimum gross weekly base wage rate for a room attendant of $597.67.   However, her wage receipt stubs from August 13, 2002 through about  January 2003, indicate that her regular base gross pay for a full work week during that period was only $448.00.  She was working her regular 35-hour week.  Thus, the Hotel Defendants were violating the terms of the Agreement with the union and contract with Plaintiff.

34.     From February 2003 through approximately May 15, 2003, the Hotel Defendants reduced Plaintiff's work week to only weekends.  Since she was working 40% of her normal hours, she should have earned a gross base of $239.06 weekly, but instead was paid only $179.20.

35.     In addition, on weekends Plaintiff continued cleaning 56 bathrooms, double her normal complement, and more than the normal complement of bedrooms.  Under the Agreement she was due extra pay for that excess work—at the rate of $8 per extra room.

36.     Furthermore, Plaintiff was performing extra duty by cleaning laundry which under the Agreement is a separate job classification, at $595.25 gross pay per week (for August 2002-2003).  On each 7-hour weekend shift she was cleaning the laundry for 56 bathrooms, and for 20-25 rooms.  On weekdays she now did laundry for 28 rooms and approximately 15 rooms on average.  By the terms of the Agreement, Plaintiff merited additional pay for this separately classified laundry work as well.

37.     Plaintiff should also have been paid at the rate of time and one-quarter for all her work on Saturday and Sunday.  Upon information and belief, this payment obligation was memorialized in a letter distributed by the union to Plaintiff and all the other employees at Riverside on or about June or July 2002.

*Failure to Pay Plaintiff At Rate Given by Collective Bargaining Agreement*
*(July 2003-July 2004)*

38.     Beginning on July 1, 2003 through June 30, 2004 per the Agreement, Plaintiff should have received a base gross weekly salary of $621.58 as a room attendant.  However, from her payment receipt stubs it would appear that until approximately June 15, 2004 her base gross base salary continued at the rate of $448.00 for a 35-hour week.

39.     Within this contractual year from August 23, 2003 to on or about February 2004, Defendant Khan assigned Plaintiff to clean only bathrooms five days per week.  During this time, she was ordered to clean 84 bathrooms per 7-hour shift.  This amounted to 12 bathrooms per hour or one every 5 minutes.  Khan also ordered her to do the laundry from all those bathrooms.   She complained to Khan that the workload was excessive and that a white Polish employee named Alena was being assigned less work.  She also complained that it was unfair that Alena was only assigned to clean bedrooms and no bathrooms (a less desirable task).  Khan responded that Alena speaks English unlike Pozo, is more responsible about her cleaning

duties, and is a better woman in every way.  He also told Plaintiff to go back to Cuba if she didn't like it and that she was too old to be performing her duties.  Under the Agreement Plaintiff was due extra pay for the work beyond her normal total complement of rooms, taking into account that she was covering 84 bathrooms but no bedrooms—at the rate of $8 per room.  Her normal complement of rooms is forty-three (43): 28 bathrooms plus 15 bedrooms.

40.     In February 2004 Khan reassigned Plaintiff back to her regular mix of weekend work of 56 bathrooms and 20-25 rooms, and weekday work of 28 bathrooms and approximately 15 rooms.  From February 2004 to June 30, 2004 she was also due excess pay for the work beyond the normal complement of rooms at the rate of $8 per room.

41.     Furthermore, Plaintiff was still performing extra duty by cleaning laundry which was compensable at $619.06 base gross pay per week for July 1, 2003-June 30-2004.   By the terms of the Agreement, Plaintiff merited additional pay for this separately classified laundry work as well.

42.     The payment of time and one-quarter for Plaintiff's 7-hour shifts on Saturday and Sunday should also have been taking place during this period as reflected in the letter from the union distributed to Plaintiff and other Riverside employees.

*Failure to Pay Plaintiff At Rate Given by Collective Bargaining Agreement*
*July 1, 2004-June 30, 2005*

43.     Then from July 1, 2004 through June 30, 2005, Plaintiff should have received $646.44 in gross weekly pay as a room attendant per the Agreement.  However, from July 1, 2004 through December 2004 Defendant J & J Hotel was only issuing her paychecks of base gross weekly pay of $563.00 for a full 35-hour week.  Thus, the Hotel Defendants were violating the terms of the Agreement with the Union and their contract with Plaintiff during that time.  Following an arbitration hearing in December 2004, the Hotel Defendants prospectively

began paying plaintiff at the $646.44 mandated rate, however no back-pay was paid and all the other underpayments continued.

44.      On weekends, Plaintiff continued to clean 56 bathrooms, double her normal complement of 28, and more than her normal complement of 15 bedrooms.   Under the Agreement, she was due extra pay for that excess work—at the rate of $8 per extra room.

45.      Furthermore, she was still performing extra duty by cleaning laundry which was at a base gross weekly rate of $643.82 for July 1, 2004-June 30-2005.  On weekends she was still cleaning the laundry for 56 bathrooms, and from 20-25 rooms.  On weekdays for 28 rooms and approximately 15 rooms on average.  By the terms of the Agreement, Plaintiff merited additional pay for this separately classified laundry work as well.

46.      During this time period Plaintiff should also have been paid for her weekend work at the rate of time and one-quarter.

*Situation Since Filing of Complaint*
*(January 9, 2006-Present)*

47.      From the time Plaintiff was first employed by J & J Hotel to work at Riverside in August 2001 until the filing of her complaint in this action in January 2006, Defendant J & J Hotel also withheld taxes on her gross weekly income as if she were single rather than married, which she was throughout that time.  This meant that J & J Hotel was withholding more money from her weekly pay and she was receiving less net pay each week than she should have been (on top of all the other illegal underpayments).  This reduced her weekly cash flow which made it more difficult to provide for her family causing her additional hardship—even if at the end of the year tax adjustments were made.

48.      From the time her complaint was filed on or about January 9, 2006, Defendant J & J Hotel began withholding the correct amount from Plaintiff's paychecks on a weekly basis,

taking into account that she is married not single.  This withholding has been based on the correct base gross weekly salary amount per the Agreement for a room attendant.

49.     However, Plaintiff has continued to have to work on weekends, despite numerous requests to Khan to allow her to attend her church.  On weekends she has also had to clean 56 bathrooms, double her normal complement and more than her normal complement of bedrooms.  Under the Agreement she continues to be due extra pay for that excess work—at the rate of $8 per extra room.

50.     Furthermore, she was still performing extra duty by cleaning laundry which was paid at a base gross weekly rate of $635.26 for the July 2005-June 2006 time period  On weekends she has still been cleaning the laundry for 56 bathrooms, and from 20-25 rooms.  On weekdays for 28 rooms and approximately 15 rooms on average.  By the terms of the Agreement, Plaintiff has continued to merit additional pay for this separately classified laundry work as well.

51.     Moreover, Plaintiff has still not been receiving time and one-quarter for the hours she continues to work on Saturday and Sunday.

*Discriminatory Failure to Accommodate Religion, Harassment*
*and Union Breach of Duty of Fair Representation*
*(July 2002-Present)*

52.     Since January 2002, Plaintiff's temporary assignment to work weekends has become permanent.  She is a devout Catholic and beginning in mid-2002 has complained every week to Khan that she wanted weekends off to attend church in Staten Island.

53.     Khan's response until she filed her EEOC charge in July 2005 had been to tell her to leave if she did not want to work every weekend.  He refused to give her even one Sunday per month off.  At one point, he made the absurd proposal of giving her four hours off to attend a

Catholic parish of her choice in Manhattan on Sundays if she would bring in a letter from a priest stating that she needed to attend church.  Plaintiff rejected this proposal, stressing that she wanted to attend her regular church with her family in Staten Island.  Khan responded that in that case she could wait until 2006 or maybe 2007 to be given one Sunday per month off.

54.    In addition, on an almost daily basis Khan verbally harassed Plaintiff in overtly prejudicial terms and subjected her to differential treatment.  Khan consistently assigned Plaintiff more work than Alena, a white Polish room attendant.  He regularly told Plaintiff to go back to Cuba if she did not like conditions at the hotel.  Khan also regularly referred to her inability to speak English in disparaging terms.   For example, he did this when he assigned Plaintiff to clean 84 bathrooms a shift and compared her unfavorably to Alena.   Khan also told her that she was too old to do the job.  Between July 2002 and July 2005 Khan regularly hollered these prejudiced, unflattering remarks at Plaintiff in the presence of her co-workers at Riverside, causing her acute embarrassment and mental distress.  In addition, he made it a habit of turning his back on Plaintiff whenever she walked by him in a hotel corridor.

55.    Khan ignored her consistent complaints beginning in August 2002 that she was not being paid the proper wages as mandated by the Agreement, and was being given too much work.  She regularly informed Khan that she was being treated differently than the white Polish room attendant, Alena, who was neither given excessive work nor forced to give up her weekends.

56.    On or about August 2002 she made a formal complaint with Local 758 SEIU concerning wages and work conditions.  John Hickey, the union president, sent Harry Rygor, another union official and a translator, Leo Lanci, to Riverside that month.  All the unionized employees met in a room with the union representatives and Khan.  At the conclusion of the

meeting Mr. Rygnor told Plaintiff and the other employees that he would resolve their problems with hotel management.

57.     However, nothing changed at Riverside. As a result Plaintiff began calling up Mr. Hickey once a month. On every occasion she was told that he was either on vacation or out to lunch. Plaintiff got the same response when she followed up with Mr. Rygnor for well over a year through the end of 2002 and most of 2003.

58.     In the meantime, on or about January 2003, Plaintiff was in the employee lounge at Riverside with a co-worker Halina at about 12:30pm. Mr. Enderman, general manager for    J & J Hotel, knocked on the door and took out Halina to talk with her. When Enderman had finished speaking with Halina, Plaintiff asked if she could speak to him. He told her to meet him in the Riverside business office in 15 minutes. At the appointed time, Plaintiff came to the office but Enderman said he had to leave and took off quickly towards an exit. Plaintiff pursued and caught off with him. She told Enderman that she needed to be given Sundays off to attend church, and that cleaning 56 bathrooms and 20-25 rooms on weekends was excessive work. He told her that this was not his problem and to speak to Khan who was then vacationing in Pakistan. Enderman then added that if Plaintiff did not like working at Riverside she should just quit the job.

59.     Since Plaintiff could not reach union officials by phone, on or about November 2003 she came in person to the union headquarters at 9:30am and asked to speak directly to Mr. Hickey. She was kept waiting all morning outside his office. Finally, at lunchtime Mr. Hickey emerged from his office, said "Hello Yolanda", and kept on walking by her. When Mr. Hickey subsequently did not return, Ms. Colon, his personal secretary who spoke Spanish, informed Plaintiff that Mr. Hickey had become sick at lunch and that Plaintiff should leave the premises.

60.     Khan subsequently admitted to Plaintiff that he had failed to pay union dues out of her paycheck for the past year.

61.     Plaintiff's husband then called Union President Hickey to urge him to assist Plaintiff.  Several days later Plaintiff returned to union headquarters on or about December 2003.  There she was told by Mr. Rygnor that he would go Riverside to address her concerns with hotel management.

62.     On or about January 2004, Plaintiff met at the Riverside office with Mr. Rygnor, a union translator, and Khan.  Plaintiff reiterated that she wanted weekends off, and as a start would like at least one weekend a month off.  She also stressed that since August 2003 she was being asked to clean 84 bathrooms and that Khan was harassing her.  Khan said that she did not need to clean all 84 bathrooms just those that were dirty.  He said that in 2006 or 2007 he would give her one Sunday a month off.  Plaintiff responded that this was unacceptable. Union representative Harry Rygnor told Plaintiff that he had worked weekends for 15 years and it shouldn't be a problem for her.  Plaintiff also complained that she was not being properly paid under the Agreement.  Mr. Rygnor did not press Khan on this issue either.

63.     No positive results followed this meeting for months.  So she came to union headquarters to speak to President Hickey who told her he was tired of her complaints, and that if she had a problem she should take it up with the National Labor Relations Board (the "Board").

64.     Plaintiff called the Board but was informed that five workers needed to complain from the hotel in order for the Department to look into the matter.  She subsequently talked to co-workers, and eventually four signed a letter with her to the Board complaining about the union which she sent in on or about November 2004.

65.      Plaintiff also wrote a letter, dated November 11, 2004 addressed to Mr. Rygnor at Local 758 SEIU in which she reiterated the problems she had been experiencing at Riverside in terms of weekend work, pay and discriminatory treatment by Khan.

66.      Finally more than two years after Plaintiff had initially complained to the union in August 2002, Local 758 moved ahead and scheduled an arbitration concerning Riverside workers. On December 20, 2004, a hearing was held before an arbitrator. Plaintiff and her four co-workers were present, along with Riverside Manager Khan, Riverside's attorney, and attorney Kent Hirozawa, representing the union. The focus was on the underpayment of union workers at Riverside. When asked for Riverside's payment records, Khan initially claimed that he did not bring them because they were too voluminous to fit into his car.   After a break he returned with the records  At the end, the arbitrator told  Khan as the Hotel Representative to pay the employees what they were owed without being specific about amounts or payment deadlines. Plaintiff understood that the Hotel Defendants had 90 days to comply and pay her back wages owed.

67.      Following the arbitration, the Hotel began paying the mandated base gross weekly salary, however no back pay has been forthcoming since then, and the other underpayments described above related to pay for extra rooms, laundry, as well as weekend work have not been addressed.

68.      Since the December 2004 arbitration hearing Plaintiff tried numerous times to reach Mr. Hickey and Harry Rygnor at the union to find out what was happening with her back pay.  She also wanted them to assist her with ending the continued assignment of work every weekend, which interfered with the practice of her religion, as well as the harassment by Khan.

However, every time Plaintiff called, she was put through to voice recordings saying Hickey and Rygnor were unavailable.

69.       Plaintiff filed a Charge of Discrimination with the EEOC on or about July 15, 2005.  Among other grounds, that charge specified discrimination based on religion, national origin and race, as well as the failure of her employer to honor the Collective Bargaining Agreement, and the union's failure to assist her.

70.       After receiving her Right to Sue Letter from the EEOC on or about December 1, 2005, Plaintiff filed the instant suit against Khan, Riverside Hotel Studios, and Local 758 SEIU on or about January 9, 2006.  In this amended complaint, Plaintiff has added J & J Hotel Company, which issued her paychecks and owns Riverside Hotel Studios, and its general manager, Mr. Enderman.

71.       Since this action was commenced, in April 2006 Defendant Khan offered Plaintiff one Sunday per month off to attend church.  She refused that offer as a belated, inadequate response to the instant suit.

## FIRST CAUSE OF ACTION
## Labor Management Relations Act – Breach of Collective Bargaining Agreement

72.       Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

73.       J & J Hotel Company and Riverside Hotel Studios are employers within the meaning of the LMRA, 29 U.S.C. § 141 *et seq*.

74.       The actions of the Hotel Defendants described herein and, in particular, their collective failure to pay Plaintiff the wages owed her in the multitude of ways described above, constituted breaches of the Collective Bargaining Agreement in effect between Local 758 SEIU and J & J Hotel Company and Riverside Hotel Studios and breaches of contract with Plaintiff.

75.     Plaintiff has been damaged in an amount to be determined at trial as a result of the breaches of contract by the Hotel Defendants.

76.     Plaintiff also seeks an injunctive relief in the form of an order forbidding the Hotel Defendants from assigning her to do any laundry, since this is a separate job classification from room attendant under the Agreement and is thus outside the scope of her duties.

## SECOND CAUSE OF ACTION
## Labor Management Relations Act – Breach of Duty of Fair Representation

77.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

78.     Local 758 SEIU is a labor organization within the meaning of 29 U.S.C. § 141 *et seq.*

79.     The acts and omissions of Local 758 SEIU described herein, including its failure to timely and effectively address the breaches of the agreement and communicate with Plaintiff as a union member, constituted willful breaches by Local 758 SEIU of its duty of fair representation owed to Plaintiff. In particular, the union was complicit in the ongoing discrimination against Plaintiff based on her religion since union official Rygnor told her directly at a meeting with Khan that she should have no problem working weekends.

80.     Plaintiff has been damaged as a result of Local 758 SEIU's willful breaches of its duty of fair representation.

81.     Plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## The Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ("Title VII")

82.     Plaintiff repeats and realleges the paragraphs above as though fully set forth herein.

83.     Defendants J & J Hotel Company and Riverside Hotel Studios were Plaintiff's employers within the meaning of Title VII.

84.     Defendants J & J Hotel Company and Riverside Hotel Studios also acted as joint employers and/or constituted an integrated enterprise.

85.     Defendant Khan, Riverside's Manager and Plaintiff's direct supervisor, during the entire time of her employment at Riverside, acted within the course of his regular duties for the Defendant, J&J Hotel and Riverside, which thus bear the responsibility for all his actions and omissions.

86.     Defendants J&J Hotel and Riverside subjected Plaintiff to discrimination based on her religion, national origin, and race.

87.     J&J Hotel and Riverside studios subjected Plaintiff to disparate treatment compared to a white Polish room attendant, Alena, based on her race and national origin. Specifically, Khan gave Alena a lesser workload than Plaintiff, did not force her to work weekends, or do exclusively bathroom clean-ups.

88.     In addition, J&J Hotel and Riverside discriminated against Plaintiff based on her religion by failing to provide her with a reasonable accommodation. Second, Khan by ordering Plaintiff to work every weekend since 2002, failed to accommodate her request for a reasonable accommodation for her religion as a Catholic, since she has been unable to attend Sunday Mass for over four years in her parish.  Khan's offer, after Plaintiff filed suit, that she be given one Sunday a month off was not a reasonable accommodation and does not excuse the earlier discrimination.

89.     Plaintiff complained on a weekly basis of Khan's refusal to give her weekends off to provide her with a reasonable accommodation for her religion.  She also complained

directly to Mr. Enderman, who in the course of his duties for J&J Hotel and Riverside refused to act.

90.     J&J Hotel and Riverside were responsible for Khan's and Enderman's refusal to provide Plaintiff with a reasonable accommodation for her religion.

91.     Defendant Khan's derogatory remarks, and daily harassment on the basis of Plaintiff's religion, national origin and race, were severe and pervasive and created a hostile or abusive working environment that significantly altered the conditions of Plaintiff's work environment.  Khan regularly hollered at Plaintiff in the presence of her co-workers causing her acute embarrassment and distress.

92.     Plaintiff complained of these acts of harassment to Khan on numerous occasions, yet he failed to stop his harassing behavior until Plaintiff filed her EEOC Charge in July 2005.

93.     Since Khan was acting on behalf of Defendants J&J Hotel and Riverside they are responsible for his harassing conduct and breached their duty to exercise reasonable care to prevent it.

94.     J&J Hotel's and Riverside's acts and omissions alleged herein were reckless, malicious, and made with callous disregard and deliberate indifference to Plaintiff's rights.

95.     As a result of Defendant J&J Hotel's and Riverside's discriminatory acts and the union's failure to act, Plaintiff has suffered and will continue to suffer monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

96.     Plaintiff has been damaged in an amount to be determined at trial.

97.     Plaintiff also seeks injunctive relief in the form of an order forbidding the Hotel Defendants from assigning her any work on weekends as compensatory and corrective action for

its failure to accommodate her religion for over four years.  The order should also provide that she be assigned to work a 35-hour week Monday through Friday.

## FOURTH CAUSE OF ACTION
### The Civil Rights Act of 1866, 42 U.S.C. § 1981

98.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

99.     All the Hotel Defendants have discriminated against Plaintiff by denying her the same rights enjoyed by Caucasian employees with regard to the enjoyment of all benefits, privileges, terms and conditions of employment.  In particular, they have denied her the same treatment as Alena, a white Polish room attendant at Riverside.

100.     Hotel Defendants have failed to remedy this disparate treatment despite complaints by Plaintiff to Khan.

101.     Defendant Khan's threats, derogatory remarks, and harassment on the basis of Plaintiff's race were severe and pervasive and created a hostile or abusive working environment.

102.     Plaintiff reported acts of harassment to Khan on numerous occasions, yet he continued his misconduct.

103.     The other Hotel Defendants were responsible for defendant Khan's harassment of plaintiff, and breached their duty to exercise reasonable care to prevent this racial harassment.

104.     Hotel Defendants' conduct has been intentional, deliberate, and willful, conducted in callous disregard of Plaintiff's rights.

105.     Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### New York State Executive Law, 15 N.Y. Exec. Law §§ 291 *et seq.*

106.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

107.     Defendants J & J Hotel Company, its general manager Enderman, Riverside Hotel Studios, and its manager Khan are employers within the meaning of the New York State Human Rights Law.

108.     In violation of the New York State Human Rights Law, the Hotel Defendants intentionally discriminated against Plaintiff by subjecting her to disparate treatment on account of her religion, national origin, race and age.

109.     Hotel Defendants have failed to remedy this disparate treatment despite complaints by Plaintiff to Khan.

110.     Defendant Khan's threats, derogatory remarks, and harassment on the basis of Plaintiff's religion, national origin, race, and age were severe and pervasive and created a hostile or abusive working environment.

111.     Plaintiff reported acts of harassment to Khan on numerous occasions, yet he continued his misconduct.

112.     The other Hotel Defendants were responsible for Defendant Khan's harassment of Plaintiff, and breached their duty to exercise reasonable care to prevent this harassment based on religion, national origin, race, and age.

113.     Hotel Defendants' conduct has been intentional, deliberate, and willful, conducted in callous disregard of Plaintiff's rights.

22

114.     As a result of Hotel Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

115.     Plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### The New York City Human Rights Law

116.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

117.     Defendants J & J Hotel Company, its General Manager Enderman, Riverside Hotel Studios, and its manager Khan are employers within the meaning of the New York City Human Rights Law.

118.     In violation of the New York City Human Rights Law, these Defendants intentionally discriminated against Plaintiff by subjecting her to disparate treatment on account of her religion, national origin, race, and age.

119.     Hotel Defendants have failed to remedy this disparate treatment despite complaints by Plaintiff to Khan.

120.     Defendant Khan's threats, derogatory remarks, and harassment on the basis of Plaintiff's religion, national origin, race, and age were severe and pervasive and created a hostile or abusive working environment.

121.     Plaintiff reported acts of harassment to Khan on numerous occasions, yet he continued his misconduct.

122.     The other Hotel Defendants were responsible for Defendant Khan's harassment of Plaintiff, and breached their duty to exercise reasonable care to prevent this harassment based on religion, national origin, race, and age.

123.     Hotel Defendants' conduct has been intentional, deliberate, and willful, conducted in callous disregard of Plaintiff's rights.

124.     As a result of Hotel Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer monetary damages and compensatory damages for, *inter alia*, mental anguish, emotional distress, and humiliation.

125.     Plaintiff has been damaged in an amount to be determined at trial.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby demands judgment against the Defendants, and requests that this Court provide her with the following relief:

a)     Monetary damages in an amount to be established at trial including all wage and benefits lost by Plaintiff as a result of Hotel Defendants' breach of the Collective Bargaining Agreement and Defendant Local 758 SEIU's failure to fairly represent Plaintiff; and

b)     Making Plaintiff whole for all earnings she would have received but for Hotel Defendants' discriminatory and unlawful treatment and Defendant Local 758 SEIU's failure to address this treatment, including, but not limited to, wages, health insurance and other fringe benefits, bonuses, pension, back pay, front pay, and other lost employment benefits;

c)     Awarding Plaintiff compensatory damages in an amount to be proven at trial;

d)     Awarding Plaintiff punitive damages in an amount sufficient to punish and deter the Hotel Defendants;

e)     Awarding injunctive relief against the Hotel Defendants in the form of an order forbidding them from assigning Plaintiff any laundry work during any work shift;

f)      Awarding injunctive relief against the Hotel Defendants in the form of an order forbidding them from assigning Plaintiff any work-shift on Saturday and Sundays, and instead assigning her 35 hours worth of work from Monday through Fridays;

g)      Awarding attorney fees incurred by Plaintiff in this action together with the costs and disbursements of this action and such further relief as this Court deems appropriate.

h)      Entering such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.


Dated: New York, New York
       July 21, 2006

                                      Respectfully submitted,


                                      Law Office of Joshua F. Nessen, Esq


                                      By:_____/s/_____

                                          Joshua F. Nessen [JN-6450]
                                          27 West 86 Street
                                          New York, New York 10024
                                          Telephone:  (646) 351-7899
                                                      (212) 724-9070
                                          Facsimile:    (212) 712-1698
                                          E-Mail: joshnessen@aol.com
                                          *Attorney for Plaintiff*