UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

YOLANDA POZO,                                       :

        Plaintiff,                               :

      -against-                                        :

J & J HOTEL COMPANY, L.L.C., ISRAEL                 :
INGBERMAN, HOTEL RIVERSIDE STUDIOS,
YOUSAF J. KHAN & LOCAL 758, HOTEL and               :
ALLIED SERVICES UNION, SEIU, AFL-CIO,
                                                    :
        Defendants.
                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

06 Civ. 2004 (RCC) (AJP)

**OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Yolanda Pozo brought a hybrid claim against her employer, Hotel Riverside

Studios ("Riverside"), its manager, Yousaf J. Khan, its owner, J & J Hotel Company L.L.C. ("J &

J") and J & J's general manager, Israel Ingberman (collectively, the "Hotel Defendants"), and her

collective bargaining representative, Local 758, Hotel & Allied Services Union, SEIU, AFL-CIO

("Local 758" or the "Union") for breach of the duty of fair representation and breach of contract

under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  (Dkt. No. 23: 1st Am.

Compl. ¶ 1.)  Additionally, Pozo sued the Hotel Defendants for discrimination on the basis of

plaintiff's religion, national origin, race, and age under Title VII, the ADEA, 42 U.S.C. § 1981, New

York State Executive Law § 290, and New York City Administrative Code § 8-107 (1st Am. Compl.

¶ 4), and sued the Union for breach of the duty of fair representation in relation to those discrimination claims (1st Am. Compl. ¶ 3).

Presently before the Court are the Union's and the Hotel Defendants' summary judgment motions.  (Dkt. Nos. 39, 46.)  The parties have consented to decision of these motions by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 75.)  The Court heard oral argument on May 10, 2007.  (See 5/10/07 Oral Arg. Tr.)

For the reasons set forth below, the Court GRANTS summary judgment on the following claims:  (1) Pozo's hybrid section 301/fair representation claims; (2) Pozo's Title VII claims against the individual defendants; (3) Pozo's § 1981 claim against Ingberman; (4) Pozo's age discrimination claims; and (5) Pozo's duty of fair representation claims against the Union.

The Court DENIES summary judgment on the following claims:  (1) Pozo's Title VII religious accommodation and race/national origin hostile work environment claims against Riverside and J & J Hotel; (2) Pozo's NYSHRL and NYCHRL religious accommodation and race/national origin hostile work environment claims against Riverside, J & J Hotel, Khan and Ingberman; and (3) Pozo's § 1981 religious accommodation and race/national origin hostile work environment claims against Riverside, J & J Hotel, and Khan.[1]

---

[1]     The Hotel Defendants also moved to dismiss the Amended Complaint and to have monetary sanctions imposed on Pozo's counsel based on Pozo's behavior during her deposition.  (Dkt. No. 47: Hotel Defs. Br. at 4-7.)  While Pozo's deposition misconduct at times was egregious, the Court denies defendants' request because the Court adequately dealt with these discovery disputes during discovery.  (See, e.g., Dkt. No. 30: 9/21/06 Conf. Tr.; Dkt. No. 33: 10/23/06 Memo Endorsed Order.)

## FACTS

**Pozo's Claims**

Pozo's hybrid claims against defendants allege that the Hotel Defendants breached the Collective Bargaining Agreement ("CBA") with the Union by refusing to: "a) pay [Pozo] the rate for a 'room attendant' established by the Agreement; b) pay her the yearly pay raises mandated by the Agreement; c) pay her for the supplementary $8 per room charge for a room attendant beyond her normal complement of 28 bathrooms and 15 bedrooms per 7-hour shift; and d) pay her for doing laundry work, a task which is a separate job classification under the Agreement, and e) pay her augmented hourly wages for weekend work at time and one-quarter pay" (Dkt. No. 23: 1st Am. Compl. ¶ 2), and alleged that the Union breached its duty of fair representation in failing to represent plaintiff's interests under the CBA (1st Am. Compl. ¶ 3). Pozo also claims that the Hotel Defendants discriminated against her on the basis of her religion, national origin, race and age because the Hotel Defendants failed to reasonably accommodate her religion and subjected her to workplace harassment on the basis of her national origin, race and age. (1st Am. Compl. ¶ 4.) Pozo also alleges that the Union breached its duty of fair representation in failing "to properly represent her in pursuing her complaints of discrimination against the Hotel Defendants." (1st Am. Compl. ¶ 3.)

In response to defendants' summary judgment motions, however, Pozo's opposition papers addressed only the following claims: (1) the hybrid breach of duty of fair representation and breach of contract claim against the Union and the Hotel Defendants with respect to: (a) the supplementary $8 per room charge for any rooms that she cleaned above her normal complement of rooms that she claims she is owed (Dkt. No. 66: Pozo Opp. Br. at 10-21), and (b) her claim for back

pay because of underpayment of gross weekly wages from August 2001 to December 2004 (Pozo Opp. Br. at 21-22); (2) her claim that the Hotel Defendants failed to accommodate her religious beliefs and practices (Pozo Opp. Br. at 23-29); and (3) her claim that the Hotel Defendants subjected plaintiff to a hostile work environment based on her national origin, race and age (Pozo Opp. Br. at 30-37).  Pozo specifically "has decided not to pursue certain aspects of alleged contractual breaches, notably extra pay for laundry, and time and a quarter for weekends."  (Pozo Opp. Br. at 3.)  The Court therefore dismisses those claims and this Opinion addresses only the claims that Pozo still is pursuing.

### Allegations Regarding Extra Room Pay

Plaintiff Yolanda Pozo "is a 61-year old Black female, born in Cuba, and a practicing Catholic . . . [who] has limited English proficiency."  (Dkt. No. 23: 1st Am. Compl. ¶ 13.)  Pozo began working as a room attendant at Riverside on August 13, 2001.  (1st Am. Compl. ¶ 19; Dkt. No. 49: Hotel Defs. Rule 56.1 Stmt. ¶ 91; Dkt. No. 63: Pozo Aff. ¶ 2.)  At that time, Pozo worked Monday through Friday from 8:00 am until 4:00 pm with an hour off for lunch.  (Pozo Aff. ¶ 4.)  During her first five months of work at Riverside, Pozo cleaned twenty-eight bathrooms and between nine and fifteen bedrooms per seven-hour shift.  (Pozo Aff. ¶ 3.)

On January 7, 2002, defendant Yousaf Khan, Pozo's supervisor at Riverside, asked Pozo if she would "do him a favor by temporarily working on Saturdays and Sundays, while continuing to work Mondays, Tuesdays and Wednesdays."  (Pozo Aff. ¶ 8.)  Pozo agreed.  (Pozo Aff. ¶ 8.)  Khan informed Pozo that she would have to clean fifty-six bathrooms during every weekend shift as well as the normal nine to fifteen bedrooms because she was the only room attendant

working on weekends.  (Pozo Aff. ¶ 9.)  From January 2002 until January 2005, Pozo worked the weekend shifts by herself and claims that she cleaned all fifty six bathrooms each weekend day.  (Pozo Aff. ¶ 15.)

The Hotel Defendants dispute that Pozo cleaned all fifty-six bathrooms during each weekend shift, stating that it is "illogical" that she could clean twice as many bathrooms during a weekend shift as a weekday shift, since she worked the same number of hours.  (Hotel Defs. Rule 56.1 Stmt. ¶ 146.)  Pozo responds that she did clean all fifty-six bathrooms and that she worked much harder to finish them every weekend shift, saying that "[t]he pace of work was killing me."  (Pozo Aff. ¶ 15.)

During the first half of 2003, Pozo complained to the Union that she had too many bathrooms to clean during her weekend shifts.  (Dkt. No. 44: Union Rule 56.1 Stmt. ¶ 16; Dkt. No. 67: Pl. Rule 56.1 Stmt. ¶ 16[2]; Dkt. No. 42: Rygor Aff. ¶ 6.)  Harry Rygor, a Union representative, went to Riverside to meet with Pozo and Khan, with the aid of a Spanish interpreter to assist in communicating with Pozo, whose first language is Spanish.  (Union & Pl.  Rule 56.1 Stmts. ¶ 17; Rygor Aff. ¶¶ 6-7.)  Rygor told Pozo during the meeting that she did not have to clean all fifty-six bathrooms every day and that she just should clean the dirtiest bathrooms.  (Rygor Aff. ¶ 9; Hotel Defs. Rule 56.1 Stmt. ¶ 159; Dkt. No. 48: Rowsell Aff. Ex. L: Rygor Dep. at 126-27; Union Rule 56.1 Stmt. ¶ 20; Pozo Aff. ¶ 16.)  Khan "agreed that she did not have to clean all the bathrooms when she was working alone, and that she should clean only the dirtiest ones."  (Union Rule 56.1 Stmt.

---

[2]    Plaintiff's response to the Union's Rule 56.1 Statement are on pages 39-40 of Plaintiff's Rule 56.1 Statement.

¶ 20; Hotel Defs. Rule 56.1 Stmt. ¶ 159; Pozo Aff. ¶ 16.)  Rygor felt that "this meeting would relieve any pressure [Pozo] may have felt to clean more than she was able to during each shift."  (Hotel Defs. Rule 56.1 Stmt. ¶ 160; Rygor Dep. at 133-34.)  Pozo stated, however, that she continued to clean all fifty-six bathrooms during her weekend shift because she would get in trouble with Khan when the Union representative was not there if Khan found a bathroom that he considered to be dirty. (Pozo Aff. ¶ 16.)

Rygor stated that Pozo did not ever assert to anyone at the Union that she was entitled to extra room pay as a result of cleaning those "extra" bathrooms at any time prior to filing this action.  (Rygor Aff. ¶ 11; Union & Pl. Rule 56.1 Stmts. ¶¶ 24-25.)  Rygor stated that if Pozo had complained about extra room pay, he "would have told her that there was no violation as long as they were paying her the room attendant rate, . . . and she was completing her work within her regular tour."  (Rygor Aff. ¶ 11; Union & Pl. Rule 56.1 Stmts. ¶ 25.)

The CBA includes a schedule denoting the minimum weekly rates for room attendants.  (Dkt. No. 48: Rowsell Aff. Ex. M: CBA at 31, Sched. A.)  In addition, the CBA specifies that: "For each room they service over and above their regular complement of rooms, room attendants shall receive eight ($8.00) dollars."  (CBA at 10, Article IX(i).)  Pozo contends that she should have received $8.00 for each bathroom that she cleaned during her weekend shift that was over the normal twenty-eight bathrooms.  (Pozo Aff. ¶ 15.)

Riverside is a single resident occupancy ("SRO") hotel.  (Hotel Defs. Rule 56.1 Stmt. ¶ 83; Dkt. No. 67: Pl. Rule 56.1 Stmt ¶ 83; Union & Pl. Rule 56.1 Stmts. ¶ 1.)  Permanent or long-term residents occupy a majority of Riverside's rooms.  (Hotel Defs. & Pl. Rule 56.1 Stmts. ¶ 84;

Union & Pl. Rule 56.1 Stmts. ¶ 1.)  According to Riverside, the room attendants do not clean the bedrooms of Riverside's permanent residents.  (Hotel Defs. Rule 56.1 Stmt. ¶ 85; Rygor Aff. ¶¶ 7, 17.)  Most of Riverside's rooms are single rooms with no private bathroom facilities; instead, the "rooms open onto long hallways, and on the hallways there are common bathrooms that are open to all of the residents."  (Union & Pl. Rule 56.1 Stmts. ¶ 1; Rygor Aff. ¶ 3.)  Unlike the bathrooms at "elite" hotels, "[t]he bathrooms at Riverside do not contain any amenities, such as soaps, shampoos, coffeemakers, or other items you would find in a more upscale hotel," and are similar to the bathrooms "of a college dormitory, where everyone brings their own toiletries into the bathroom when they shower and then removes their toiletries when they are done."  (Hotel Defs. & Pl. Rule 56.1 Stmts. ¶¶ 135-36; Rygor Dep. at 74-76.)

Defendants claim that because Riverside is an SRO hotel, the CBA provision regarding extra room pay does not apply.  (Hotel Defs. Rule 56.1 Stmt. ¶¶ 86-87; Rygor Dep. at 94-97; Dkt. No. 48: Rowsell Aff. Ex. N: Hickey Dep. at 91-94.)  Defendants claim that that CBA provision relates only to elite hotels that maintain room quotas for their room attendants and provide extra pay to those room attendants when they clean extra rooms because of the "work involved in maintaining such rooms and all of the amenities included in these rooms."  (Hotel Defs. Rule 56.1 Stmt. ¶ 128; Rygor Dep. at 37-38.)  At the elite hotels, "[t]he regular complement of rooms that a room attendant is expected to service in a seven-hour shift, known in the industry as a room quota, is negotiated between the Union and the hotel for each property based on the size and appointments of the rooms."  (Union & Pl. Rule 56.1 Stmts. ¶ 6.)  On the other hand, "[t]here has never been a room quota at [Riverside's] facility or other SRO's because the concept is not applicable to that kind

of hotel.  Room attendants are simply expected to do the cleaning work they are assigned, to the extent reasonably possible within their seven hours of daily work.  For this reason, the contractual provision for extra room pay has never applied to SRO's and similar establishments."  (Union & Pl. Rule 56.1 Stmts. ¶ 7; Rygor Aff. ¶ 10; Dkt. No. 41: Hickey Aff. ¶¶ 6-7.)

**Allegations Regarding Back Pay for Underpayment of Gross Weekly Wages**

Pozo summarizes her claim regarding back pay for underpayment of gross weekly wages as follows:

> Under [the CBA], during my first year of work I should have been receiving 75% of the minimum amount for a room attendant specified in Schedule A of the Agreement, $574.68, which would have equaled $431 for a 35-hour week.  However, I was informed by Mr. Rygor that I was not being paid the proper amount in gross weekly pay.  This underpayment of the gross weekly amount persisted until an arbitration on the matter was held on December 20, 2004.  I still have not received any of the back pay owed me covering August 2001 - December 2004 since that time.  Nor prior to this suit, had the Union returned any of my numerous telephone calls or informed me in any way about the status of my back pay.

(Dkt. No. 63: Pozo Aff. ¶ 13.)  After the filing of Pozo's opposition papers, this and other matters relating to the Hotel Defendants' breach of the CBA were settled through Union arbitration, by an agreement dated December 1, 2006.  (Dkt. No. 68: Rowsell Reply Aff. Ex. A: Settlement Agreement.)[3]  Pozo received $21,084.75 in back pay from Riverside pursuant to the agreement, covering the back pay issues Pozo complained of in this case.  (Settlement Agreement at 1.)

---

[3]     It is undisputed that Rygor determined that Pozo was being underpaid when he examined some of her pay statements.  (Union & Pl. Rule 56.1 Stmts. ¶ 14.)  When Riverside failed to correct Pozo's wage rate, Rygor instructed the Union's lawyers to include Pozo in the arbitration with Riverside over correct wage rates.  (Union & Pl. Rule 56.1 Stmts. ¶ 15.)

**Allegations Regarding Failure to Accommodate Pozo's Religion**

In March 2002, Pozo complained to Khan that she was disappointed that her weekend work schedule was not temporary, as Khan had originally described, and told him that the schedule was preventing her from attending Sunday Mass at her church with her family. (Dkt. No. 63: Pozo Aff. ¶ 10.) Pozo is a devout Catholic, and prior to working at Riverside, attended Sunday mass regularly with her family. (Pozo Aff. ¶¶ 22-24.) Pozo requested at least one Sunday off per month. (Pozo Aff. ¶ 25.) Pozo claims that Khan responded that she would have to quit her job at Riverside if she did not do as she was told. (Pozo Aff. ¶ 10, 25.)

In 2003, Pozo contacted the Union representative Rygor and told him that "she wanted weekends off in order to attend services at her church." (Dkt. No. 44: Union Rule 56.1 Stmt. ¶ 22[4]; Dkt. No. 42: Rygor Aff. ¶ 10.) Rygor explained to Pozo that she was not entitled to weekends off because the only other room attendant at Riverside, who received weekends off, was more senior than Pozo, and therefore was entitled to the first choice of which days of the week she worked. (Union Rule 56.1 Stmt. ¶ 22; Rygor Aff. ¶ 10.) That attendant also was Catholic. (Rygor Aff. ¶ 18.) The industry uses seniority to determine priority among employees for shifts and days off. (Union & Pl. Rule 56.1 Stmts. ¶ 9; Hotel Defs. & Pl. Rule 56.1 Stmts. ¶¶ 102-03.)

Rygor arranged a meeting at Riverside with Pozo, Khan and a Spanish interpreter to discuss the issue. (Union & Pl. Rule 56.1 Stmts. ¶ 23; Rygor Aff. ¶ 10.) At the meeting, Rygor requested Khan to give Pozo at least one Sunday off per month. (Union & Pl. Rule 56.1 Stmts. ¶ 23;

---

[4]   Pozo contends that the meeting occurred in 2004, not 2003. (Pozo Rule 56.1 Stmt. ¶ 22.) The dispute as to the meeting's date is not material.

Rygor Aff. ¶ 10.)   Khan said that "he would see what he could do," but did not give Pozo any

Sundays off during 2003 through 2005.  (Union & Pl. Rule 56.1 Stmts. ¶ 23; Rygor Aff. ¶ 10.)

Pozo claims that she brought the issue up again with Rygor during a meeting with him

and Khan in January 2004.  (Pozo Aff. ¶ 25.)  According to Pozo, Rygor told her during this meeting

that he had worked for fifteen years on weekends and that she did not have a right to weekends off

because that was based on seniority.  (Pozo Aff. ¶ 25; see Dkt. No. 49: Hotel Defs. Rule 56.1 Stmt.

¶ 244.)  Up until January 2005, another room attendant named Halina Krzynwinska was the more

senior room attendant, so Halina had the first choice of whether to work weekends, and there were

no other room attendants.  (Pozo Aff. ¶ 25; see Rygor Aff. ¶ 7.)  As of January 2005, Riverside hired

other less senior room attendants, all of whom also worked weekend shifts.  (Pozo Aff. ¶¶ 25, 28.)

Pozo claims that up until the end of June 2006, Khan did not give her time on

Sundays to attend services at her parish.  (Pozo Aff. ¶ 25.)  Pozo claims that Khan told her that she

could have four hours off on Sundays to attend a Catholic mass, but only if she attended the mass

in Manhattan.  (Pozo Aff. ¶ 26.)  Khan allegedly told Pozo to "obtain a letter from [her] priest giving

[her] permission to attend church in another parish," rather than to attend mass at her regular church

in Staten Island.  (Pozo Aff. ¶ 26.)  Pozo understood Khan's instructions to mean that she would have

to report to Riverside at the normal 8:00 am on Sunday, then attend mass in Manhattan, and then

return to work.  (Pozo Aff. ¶ 26.)  According to Pozo, a reasonable accommodation would have been

to let her come to work at noon on Sunday (after she attended her church in Staten Island), and work

from noon to 8:00 pm, instead of 8:00 am to 4:00 pm.  (Pozo Aff. ¶ 26.)  Pozo did not want to attend

mass in Manhattan because she was unfamiliar with the parishes in Manhattan, and she was much

more comfortable with her parish in Staten Island, where she was a member of the community for over twenty years; she thus did not take any time off on Sundays to go to mass in Manhattan. (Pozo Aff. ¶¶ 26-27.) The Hotel Defendants' affidavits did not state anything regarding this alleged offer of accommodation. (See Rowsell Aff.; Khan Aff.) Instead, the Hotel Defendants note that Khan wrote a memo to Pozo dated February 1, 2006, stating: "Yolanda, please be advised that if you want to have Sundays as one of your scheduled days off we can arrange it. If you agree to this, your scheduled days off would now be Thursdays and Sundays." (Dkt. No. 48: Rowsell Aff. Ex AA: 2/1/06 Memo; Hotel Defs. Rule 56.1 Stmt. ¶ 254.) Additionally, the Hotel Defendants claim that once this lawsuit began, in April 2006 Khan offered Pozo one Sunday off per month to attend church. (Hotel Defs. Rule 56.1 Stmt. ¶ 254; Rowsell Aff. Ex. C: Pozo Dep. at 137-38.) The Hotel Defendants also allege in their brief that "Mr. Khan's offer to accommodate [Pozo] by allowing her to complete her eight (8) hour shift at any time on Sunday which would allow her to attend Mass would be a reasonable accommodation, which she refused." (Dkt. No. 47: Hotel Defs. Br. at 17.) However, this alleged offer is not reflected in any of the Hotel Defendants' accompanying affidavits or exhibits. (See Rowsell Aff.; Khan Aff.)

**Pozo's Hostile Work Environment Allegations**

Pozo claims that during her initial five months working at Riverside, her relationship with Khan was amicable. (Dkt. No. 63: Pozo Aff. ¶ 7.) Pozo claims that the relationship changed after an incident at Riverside with one of the long term guests:

> A guest staying in the room opposite the hotel's office was known to sell discounted cigarettes. On or about December 2001, I went to the guest's room to purchase cigarettes. The door was ajar, and when I looked in I saw him smoking marijuana

and that there were packets of a white powder (I believed to be cocaine) and marijuana on the table in front of him.  The guest made it clear that I should leave. I immediately went across the hallway to the hotel office and informed Mr. Khan that the guest was smoking and dealing drugs at Riverside.  As hotel manager, I urged him to call the police.  Instead, Mr. Khan told me to call 911.  I believed it was Mr. Khan's obligation to handle the problem, and that by placing the call I would be putting myself in danger since the guest had just seen me.  Since that time, Mr. Khan ceased to be amicable towards me and our relations steadily worsened as he burdened me with excessive work and then treated me in an abusive and discriminatory manner.

(Pozo Aff. ¶ 7.)  Pozo claims that after that, "[o]n an almost daily basis, Mr. Khan would tell me that

I was too old to do the work, and would make fun of my limited English proficiency."  (Pozo Aff.

¶ 18.)  Pozo claims that Khan often told her to "go home and 'back to Cuba'" if she did not do as she

was told.  (Pozo Aff. ¶¶ 16, 18.)

Between August 2003 and February 2004, Pozo claims that Khan assigned her even

more work to do, and treated her differently from the other room attendant at the hotel, Halina, who

is a white Polish woman with a better English proficiency than Pozo.  (Pozo Aff. ¶ 18.)  During this

time, Khan allegedly ordered Pozo to clean only bathrooms on weekdays, which meant that she

would have eighty-four bathrooms to clean per shift, and Halina was to clean only bedrooms, which

was the more desirable assignment.   (Pozo Aff. ¶ 18.)   When Pozo complained about this

assignment, Khan allegedly stated that Halina was a better worker, that Pozo was too old to be doing

the job, that Halina spoke better English than Pozo, and that Pozo could "go back to Cuba" if she did

not want to follow his orders.  (Pozo Aff. ¶ 18.)

Pozo claims that Khan "pepper[ed]" her with insults on a nearly daily basis, frequently

in front of other Riverside workers.  (Pozo Aff. ¶ 19.)  As a result, Pozo claims that she became

increasingly depressed and anxious.  (Pozo Aff. ¶ 20.)  On September 16, 2006, Dr. C. Edward Robins, a psychologist hired by Pozo's counsel, diagnosed Pozo with trauma-induced depression and post-traumatic stress disorder.  (Pozo Aff. ¶ 20 & Ex. B.)

Pozo claims that she made Rygor aware of Khan's discriminatory remarks and her hostile work environment starting in August 2002.  (Pozo Aff. ¶ 21.)  Pozo claims that she tried for over a year to telephone Rygor or Union President John Hickey but was unable to get through to them.  (Pozo Aff. ¶ 21.)  In November 2003, Pozo and her husband went to see the Union in person to discuss the discrimination.  (Pozo Aff. ¶ 21.)  In January 2004, Pozo had a meeting with Khan and Rygor where she informed them about "a) being constantly hollered at; b) receiving disparaging remarks about her English proficiency; c) being told to return to her native country, or d) being too old for the job."  (Pozo Aff. ¶ 21.)  In November 2004, Pozo sent Union President Hickey a letter, in Spanish, regarding "Khan's negative comparison of [her] to Halina, as well as the harassment, and discrimination to which [she] was being subjected."  (Pozo Aff. ¶ 21 & Ex. C.)

Khan states that he "never treated Plaintiff differently based on her religion, national origin, race or age." (Khan Aff. ¶ 27.)  Khan denies ever making remarks to Pozo regarding her age, ability to speak English or saying that she should "go back to Cuba," and states that he treated her "the same as everyone else." (Khan Aff. ¶¶ 27-34; Dkt. No. 49: Hotel Defs. Rule 56.1 Stmt. ¶¶ 178-95.)  Khan claims that all room attendants received room cleaning assignments from the front desk clerk, and that he was not responsible for room attendant assignments.  (Khan Aff. ¶¶ 36-37.)  Khan claims that he did not give Halina preferential treatment by assigning her less rooms to clean because he was not the one who assigned rooms to either Halina or Pozo.  (Khan Aff. ¶¶ 35-37.)

Khan admits to yelling at Pozo "when she comes to him and complains and is behaving inappropriately, yelling or refusing to let him get a word in edgewise." (Hotel Defs. Rule 56.1 Stmt. ¶ 188; Khan Aff. ¶ 19.)  Khan also admits that when Pozo complained, he told her that if she did not like the working conditions at the hotel, she could go home.  (Hotel Defs. Rule 56.1 Stmt. ¶ 181.)  Khan claims that he was unaware of any charges that Pozo had regarding a discriminatory or hostile work environment until he was served with the complaint in this case. (Khan Aff. ¶ 39.)

Pozo admitted that she has sworn at Khan.  (Hotel Defs. Rule 56.1 Stmt. ¶ 107; Dkt. No. 48: Rowsell Aff. Ex. F.: Pozo Dep. at 400-01.)  Pozo referred to Khan as "that Pakistani." (Hotel Defs. Rule 56.1 Stmt. ¶ 119-20; Rowsell Aff. Ex. G: Pozo Dep. at 518; Rowsell Aff. Ex. K: Pozo Dep. at 894-95.)  On June 29, 2006, Khan gave Pozo a bottle of wine for her birthday, and in response, Pozo hugged and kissed Khan.  (Hotel Defs. & Pl. Rule 56.1 Stmts. ¶ 108; Rowsell Aff. Ex. C: Pozo Dep. at 172-73.)

**Procedural History**

On November 18, 2004, Pozo filed a Charge of Discrimination with the National Labor Relations Board ("NLRB") against the Union for failing to pursue her arbitration claim and for refusing to process her grievances regarding harassment and discrimination at Riverside.  (Dkt. No. 49: Hotel Defs. Rule 56.1 Stmt. ¶ 4; Dkt. No. 67: Pl. Rule 56.1 Stmt. at p. 2; Dkt. No. 48: Rowsell Aff. Ex. U.)  In January 2005, Pozo voluntarily withdrew her NLRB charge.  (Hotel Defs. Rule 56.1 Stmt. ¶ 6; Rowsell Aff. Ex. V: Confirmation Ltr.)

On June 17, 2005 and July 14, 2005, Pozo filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights against Riverside and the Union, asserting discrimination on the basis of race and national origin and failure to accommodate her Catholic religion; her charges did not assert any claim of age discrimination. (Hotel Defs. Rule 56.1 Stmt. ¶ 7; Pl. Rule 56.1 Stmt. at p. 2; Rowsell Aff. Ex. W.)

Pozo filed her original complaint in this case pro se. (Dkt. No. 2: Pro Se Compl.) On July 24, 2006, Pozo's counsel filed an amended complaint in this case (Dkt. No. 18: Am. Compl.), and on August 15, 2006, Pozo's counsel filed a further amended complaint (Dkt. No. 23: 1st Am. Compl.).

On November 3, 2006, the Union and the Hotel Defendants filed their summary judgment motions. (Dkt. Nos. 39 & 46.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

#### A.   The General Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);  accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[5]

The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).  To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

---

[5]      See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

**B.** **Additional Summary Judgment Standards in Employment Discrimination Cases**[6]

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." Gallo v. Prudential Residential Servs., Ltd. P'Ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[7]  Because the employer rarely

---

[6]   For additional cases authored by this Judge discussing the summary judgment standard in employment discrimination cases in language substantially similar to that in this entire section of this Opinion, see, e.g., Evans v. Consumer Info. & Dispute Resolution, 05 Civ. 8252, 2006 WL 1209904 at *7-8 (May 5, 2006) (Peck, M.J.), aff'd, No. 06-3334-cv, 2007 WL 1174147 (2d Cir. Apr. 19, 2007); Ferrer v. Potter, 03 Civ. 9113, 2005 WL 1022439 at *2-4 (S.D.N.Y. May 3, 2005) (Peck, M.J.); Williams v. City of New York, 04 Civ. 1993, 2005 WL 839103 at *2-7 (S.D.N.Y. Apr. 12, 2005) (Peck, M.J.); Heskin v. Insite Adver., Inc., 03 Civ. 2508, 2005 WL 407646 at *10-16 (S.D.N.Y. Feb. 22, 2005) (Peck, M.J.); Taylor v. Potter, 99 Civ. 4941, 2004 WL 1811423 at *9-14 (S.D.N.Y. Aug. 16, 2004) (Peck, M.J.), aff'd, 148 Fed. Appx. 33 (2d Cir. 2005);  Dodson v. CBS Broad., Inc., 02 Civ. 9270, 2004 WL 1336231 at *15-21 (S.D.N.Y. June 15, 2004) (Peck, M.J.); Slaitane v. Sbarro, Inc., 03 Civ. 5503, 03 Civ. 5504, 2004 WL 1202315 at *7-12 (S.D.N.Y. June 2, 2004) (Peck, M.J.); Diaz v. Weill Med. Ctr. of Cornell Univ., 02 Civ. 7380, 2004 WL 285947 at *13-17 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), aff'd, 138 Fed. Appx. 362 (2d Cir. 2005); Viruet v. Citizen Advice Bureau, 01 Civ. 4594, 2002 WL 1880731 at *8-13 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); Brown v. Cushman & Wakefield, Inc., 01 Civ. 6637, 2002 WL 1751269 at *12-13, 20-22 (S.D.N.Y. July 29, 2002) (Peck, M.J.), report & rec. adopted, 235 F. Supp. 2d 291 (S.D.N.Y. 2002) (Berman, D.J.); Kennebrew v. New York City Hous. Auth., 01 Civ. 1654, 2002 WL 265120 at *6-10 (S.D.N.Y. Feb. 26, 2002) (Peck, M.J.) (citing my prior decisions); Cobian v. New York City, 99 Civ. 10533, 2000 WL 1782744 at *7, 11 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), aff'd, 23 Fed. Appx. 82 (2d Cir. 2001); Austin v. Ford Models, Inc., 95 Civ. 3731, 2000 WL 1752966 at *6, 8 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.), aff'd, 22 Fed. Appx. 76 (2d Cir. 2001), cert. denied, 537 U.S. 848, 123 S. Ct. 189 (2002).

[7]   Accord, e.g., Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); Cardoza v. Healthfirst, Inc., 98 Civ. 3050, 1999 WL 782546 at *1-2 (S.D.N.Y. Sept. 30, 1999); see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

leaves direct evidence of its discriminatory intent, the Court must carefully comb the available

evidence in search of circumstantial proof to undercut the employer's explanations for its actions.

E.g., Gallo v. Prudential Residential Srvs., Ltd. P'Ship, 22 F.3d at 1224.  "[S]ummary judgment may

not be granted simply because the court believes that the plaintiff will be unable to meet his or her

burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's

position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding

would constitute clear error." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations

omitted).  Nonetheless, when an employer provides convincing evidence to explain its conduct and

the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may

conclude that no material issue of fact exists and it may grant summary judgment to the employer.

E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d

Cir. June 29, 2000); Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff

v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).  In other words, to defeat summary

judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to

permit a rational finder of fact to infer that the defendant's employment decision was more likely

than not based in whole or in part on discrimination." Stern v. Trustees of Columbia Univ., 131 F.3d

at 312; see, e.g., Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia

Univ., 224 F.3d 33, 42 (2d Cir. 2000) (The question on summary judgment is "whether the evidence,

taken as a whole, supports a sufficient rational inference of discrimination.  To get to the jury, it is

not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation

of intentional discrimination.") (internal quotations & alterations omitted), cert. denied, 540 U.S.

811, 124 S. Ct. 53 (2003); <u>Van Zant</u> v. <u>KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996)

(plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational

finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that

more likely than not [discrimination] was the real reason for the discharge'").[8/]   Indeed, the Second

Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment

is unavailable to defendants in discrimination cases is unsupportable.'"   <u>Weinstock</u> v. <u>Columbia</u>

<u>Univ.</u>, 224 F.3d at 41.

## II.   DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON POZO'S HYBRID SECTION 301/FAIR REPRESENTATION CLAIMS

### A.   Hybrid Section 301/Fair Representation Standard

"Although formally comprised of two separate causes of action, a suit in which an

employee alleges that an employer has breached a CBA and that a union has breached its duty of fair

representation by failing to enforce the CBA is known as a 'hybrid § 301/fair representation claim.'"

<u>Acosta</u> v. <u>Potter</u>, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006) (citing <u>DelCostello</u> v. <u>Int'l Bhd. of</u>

<u>Teamsters</u>, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 2290-91 (1983), & <u>Carrion</u> v. <u>Enter. Ass'n, Metal</u>

<u>Trades Branch Local Union 638</u>, 227 F.3d 29, 33-34 (2d Cir. 2000)).   "To establish a hybrid

§ 301/DFR [duty of fair representation]  claim, a plaintiff must prove both (1) that the employer

breached a collective bargaining agreement and (2) that the union breached its duty of fair

representation vis-a-vis the union members." <u>White</u> v. <u>White Rose Food</u>, 237 F.3d 174, 178-79 (2d

---

[8/]      See also, e.g., <u>Budde</u> v. <u>H&K Distrib. Co.</u>, 2000 WL 900204 at *1; <u>Scaria</u> v. <u>Rubin</u>, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), <u>aff'd</u>, 117 F.3d 652, 654 (2d Cir. 1997).

Cir. 2001).[9/] "The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." White v. White Rose Food, 237 F.3d at 179.[10/]

   "A claim for breach of the duty of fair representation consists of two elements.  First, 'a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" White v. White Rose Food, 237 F.3d at 179 (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S. Ct. 292, 300 (1998)).[11/] "'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," as to be irrational.'" White v. White Rose Food, 237 F.3d at 179, 180-81 (citing Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 111 S. Ct. 1127 (1991)).[12/] "'This "wide range of reasonableness" gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.'" White v. White Rose Food, 237 F.3d at 179.

---

[9/]  See also, e.g., DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. at 164-65, 103 S. Ct. at 2290-91; Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005); Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d 440, 444,(S.D.N.Y. 2007).

[10/]  Accord, e.g., DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. at 165, 103 S. Ct. at 2291; Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d at 33-34.

[11/]  See also, e.g., Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d at 282; Wilder v. GL Bus Lines, 258 F.3d 126, 129 (2d Cir. 2001);  Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d at 444.

[12/]  See also, e.g., Marquez v. Screen Actors Guild, Inc., 525 U.S. at 45-46, 119 S. Ct. at 300; Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d at 282-83; Wilder v. GL Bus Lines, 258 F.3d at 129; Acosta v. Potter, 410 F. Supp. 2d at 308; Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 735 (S.D.N.Y. 2005).

"A showing of '[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action." White v. White Rose Food, 237 F.3d at 179 (quoting Sim v. New York Mailers' Union No. 6, 166 F.3d 465, 472 (2d Cir. 1999)); accord, e.g., Tomney v. Int'l Ctr. for the Disabled, 358 F. Supp. 2d at 735.  While a union cannot discriminate among employees based on improper factors (such as race or union membership), "the union has broad discretion to adjust the demands of competing groups within its constituency as long as it does not act arbitrarily."  Ryan v. N.Y. Newspaper Printing Pressmen's Union No. 2, 590 F.2d 451, 455 (2d Cir. 1979); accord, e.g., Acosta v. Potter, 410 F. Supp. 2d at  308-09.

"A union has 'broad discretion in its decision whether and how to pursue an employee's grievance against an employer.'" Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 737; see also, e.g., Chauffeurs Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68, 110 S. Ct. 1339, 1346 (1990).  "This 'discretion is essential to the proper functioning of the collective-bargaining system.  Union supervision of employee complaints promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the union. Without these screening and settlement procedures, . . . the costs of private dispute resolution could ultimately render the system impracticable.'"  Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 737 (quoting Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 51, 99 S. Ct. 2121, 2127 (1979)). "The federal laws governing the union employer relationship simply do not give [plaintiff] an absolute right to have her grievance taken to arbitration, regardless of its merit under the applicable CBA." Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d at 737; see also, e.g., Vaca v.  Sipes, 386 U.S. 171, 191, 87 S. Ct. 903, 917 (1967); Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d

at 444-45.  "In the grievance context, '[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.'" <u>Tomney</u> v. <u>Int'l Ctr. for the Disabled</u>, 357 F. Supp. 2d at 735; <u>see also</u>, <u>e.g.</u>, <u>Barr</u> v. <u>United Parcel Serv.</u>, 868 F.2d 36, 43-44 (2d Cir. 1989); <u>Jordan</u> v. <u>Viacom Outdoor Group</u>, 475 F. Supp. 2d at 445.  "Although 'a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion,' there is no 'absolute right to have [a] grievance taken to arbitration.'" <u>Tomney</u> v. <u>Int'l Ctr. for the Disabled</u>, 357 F. Supp. 2d at 735; <u>see also</u>, <u>e.g.</u>, <u>Vaca</u> v. <u>Sipes</u>, 386 U.S. at 191, 87 S. Ct. at 917; <u>Spellacy</u> v. <u>Airline Pilots Ass'n-Int'l</u>, 156 F.3d 120, 128 (2d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1017, 119 S. Ct. 1251 (1999).

"Second, if plaintiffs establish the first element of a DFR claim, they must then also prove that there was 'a causal connection between the union's wrongful conduct and their injuries.'" <u>White</u> v. <u>White Rose Food</u>, 237 F.3d at 179.[13]

"Because a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against' an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily." <u>Acosta</u> v. <u>Potter</u>, 410 F. Supp. 2d at 309.[14]

---

[13]   See also, <u>e.g.</u>, <u>Sanozky</u> v. <u>Int'l Ass'n of Machinists & Aerospace Workers</u>, 415 F.3d at 283; <u>Spellacy</u> v. <u>Airline Pilots Ass'n-Int'l</u>, 156 F.3d at 126; <u>Tomney</u> v. <u>Int'l Ctr. for the Disabled</u>, 357 F. Supp. 2d at 735.

[14]   See also, <u>e.g.</u>, <u>Kavowras</u> v. <u>N.Y. Times Co.</u>, 132 Fed. Appx. 381, 383 (2d Cir. 2005); <u>Wilder</u> v. <u>GL Bus Lines</u>, 258 F.3d at 129; <u>White</u> v. <u>White Rose Food</u>, 237 F.3d at 183; <u>Young</u> v. (continued...)

### B.    Application of the Standard to Pozo's Hybrid Claims

Based on the undisputed facts in this case, Pozo has not shown that the Union breached its duty of fair representation.

As to Pozo's claim for extra room pay, the Union and the Hotel Defendants provided a logical explanation for why Pozo is ineligible for extra room pay under the CBA, and Pozo has not submitted any evidence that refutes that explanation.  Defendants' evidence explained that the Union never negotiated a room quota with Riverside because room attendants at Riverside and other SRO hotels are not intended to be included under the CBA's extra room pay clause.  (See pages 7-8 above.)  Rygor and the Union thus did not act arbitrarily or in bad faith in failing to grieve a claim that they believed lacked merit.

At oral argument, for the first time, Pozo argued that the Union should not be allowed to agree to different arrangements for different types of hotels.  (See 5/10/07 Oral Arg. Tr. at 21-24.)  That argument is frivolous.

Pozo has not demonstrated that Rygor or the Union acted arbitrarily, discriminatorily, or in bad faith in deciding not to represent her on the extra room pay issue.  Because she cannot show that the Union breached its duty of fair representation on the issue of extra room pay, Pozo's hybrid claim against defendants fails.  See, e.g., Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d 440, 445, 447 (S.D.N.Y. 2007) (granting summary judgment on hybrid § 301 claim; plaintiff "has failed to offer any evidence that the Union's treatment of his grievance was outside the 'wide range of

---

14/        (...continued)
U.S. Postal Serv., 907 F.2d 305, 307 (2d Cir. 1990);  Jordan v. Viacom Outdoor Group, 475 F. Supp. 2d at 444.

reasonableness' afforded to union decision-making. . . . Aside from [plaintiff's] self-serving statements, all the evidence in the record is entirely consistent with an effort by the Union to advance [plaintiff's] interests without pressing a claim that it considered frivolous.").[15]

Pozo also cannot show that the Union breached its duty of fair representation with respect to her pay-related claims under the CBA. The Union itself discovered that Riverside was not correctly paying Pozo; the Union commenced arbitration proceedings on this issue upon Riverside's refusal to correct the pay discrepancies; and the Union represented Pozo continuously throughout the arbitration process. (See page 8 above.) Although the arbitration took longer than anticipated, the settlement resulted in the payment of a sizeable sum to Pozo, covering all of her pay-related claims. (See page 8 above.) Pozo therefore cannot show that the Union acted arbitrarily, discriminatorily, or in bad faith with respect to her back pay claims. See, e.g., Perez v. Commc'ns Workers of Am., 210 Fed. Appx. 27, 31 (2d Cir. 2006) (Summary judgment was appropriate where "the Union discharged its duties to [plaintiff] under its collective bargaining agreement by grieving many of Perez's suspensions, several of the warnings he received, and his termination. Perez adduced no evidence of discrimination or bad faith."); Shider v. Commc'ns Workers of Am., 95 Civ. 4908, 2004 WL 613093 at *8 (S.D.N.Y. Mar. 29, 2004) (summary judgment appropriate in breach of the duty of fair representation case where record showed "that Local 1105 represented Plaintiff

---

[15]    See also, e.g., Kavowras v. N.Y. Times Co., 132 Fed. Appx. 381, 383 (2d Cir. 2005) (affirming grant of summary judgment against plaintiff employee in hybrid § 301 claim where union "did not act arbitrarily or in bad faith for failing to pursue [a] grievance"); Wilder v. GL Bus Lines, 258 F.3d 126, 129 (2d Cir. 2001) ("[W]e cannot characterize [the union's] conduct as having been 'arbitrary, discriminatory, or in bad faith.' Accordingly, we hold that the District Court properly dismissed [plaintiff's] claims against [the union] and [his employer].").

at every stage of the grievance process, discussed Plaintiff's grievance with her, and kept her abreast of the status of her grievance."), aff'd, No. 04-2626-CV, 2005 WL 2650007 (2d Cir. Oct. 17, 2005). Indeed, at oral argument Pozo's counsel conceded that this part of the hybrid claim was mooted by the favorable arbitration award.  (See 5/10/07 Oral Arg. Tr. at 17.)

The Court grants summary judgment to all defendants on Pozo's hybrid § 301/fair representation claim.

### III. THE COURT DENIES SUMMARY JUDGMENT ON POZO'S RACE, NATIONAL ORIGIN, AND RELIGIOUS DISCRIMINATION CLAIMS AGAINST THE HOTEL DEFENDANTS

#### A. Legal Principles Governing Title VII Actions[16]

---

[16] For additional cases authored by this Judge discussing the legal principles governing employment discrimination cases in language substantially similar to that in this entire section of this Opinion, see, e.g., Williams v. City of New York, 04 Civ. 1993, 2005 WL 839103 at *5-7 (S.D.N.Y. Apr. 12, 2005) (Peck, M.J.); Heskin v. Insite Adver., Inc., 03 Civ. 2598, 2005 WL 407646 at *10-16 (S.D.N.Y. Feb. 22, 2005) (Peck, M.J.);  Taylor v. Potter, 99 Civ. 4941, 2004 WL 1811423 at *9-14 (S.D.N.Y. Aug. 16, 2004) (Peck, M.J.); Dodson v. CBS Broad., Inc., 02 Civ. 9270, 2004 WL 1336231 at *15-21 (S.D.N.Y. June 15, 2004) (Peck, M.J.); Slaitane v. Sbarro, Inc., 03 Civ. 5503, 03 Civ. 5504, 2004 WL 1202315 at *7-12 (S.D.N.Y. June 2, 2004) (Peck, M.J.); Diaz v. Weill Med. Ctr. of Cornell Univ., 02 Civ. 7380, 2004 WL 285947 at *13-17 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.); Viruet v. Citizen Advice Bureau, 01 Civ. 4594, 2002 WL 1880731 at *8-13 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); Brown v. Cushman & Wakefield, Inc., 01 Civ. 6637, 2002 WL 1751269 at *12-13, 20-22 (S.D.N.Y. July 29, 2002) (Peck, M.J.), report & rec. adopted, 235 F. Supp. 2d 291 (S.D.N.Y. 2002) (Berman, D.J.); Kennebrew v. New York City Hous. Auth., 01 Civ. 1654, 2002 WL 265120 at *6-10 (S.D.N.Y. Feb. 26, 2002) (Peck, M.J.) (citing my prior decisions); Cobian v. New York City, 99 Civ. 10533, 2000 WL 1782744 at *7, 11 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), aff'd, No. 01-7575, 23 Fed. Appx. 82, 2002 WL 4594 (2d Cir. Dec. 21, 2001); Austin v. Ford Models, Inc., 95 Civ. 3731, 2000 WL 1752966 at *6, 8 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.), aff'd, No. 01-7030, 22 Fed. Appx. 76, 2001 WL 1562070 (2d Cir. Dec. 4, 2001), cert. denied, 537 U.S. 848, 123 S. Ct. 189 (2002).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. §§ 2000e-2(a)(1).

Under the familiar McDonnell Douglas burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981);  see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).[17]  Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'"  St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506, 113 S. Ct. at 2747 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094).[18]

---

[17]   See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3, 124 S. Ct. 513, 517 n.3 (2003); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 310, 116 S. Ct. 1307, 1309 (1996);  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47 (1993); Mandell v. County of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003); Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002); Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000); Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998), abrogated on other grounds by Swierkiewicz v. Soreona N.A., 534 U.S. 506, 122 S. Ct. 992 (2002); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

[18]   See also, e.g., Mandell v. County of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

Once a plaintiff claiming employment discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106; McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[19/]  The burden on the defendant at this phase is one of production rather than persuasion.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142, 120 S. Ct. at 2106.[20/]

"Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106.

If the defendant articulates a non-discriminatory reason, the McDonnell Douglas burden-shifting framework drops out of the picture.  E.g., Reeves v. Sanderson Plumbing Prods.,

---

[19/]   See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. at 50 n.3, 124 S. Ct. at 517 n.3; O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. at 310, 116 S. Ct. at 1309; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07, 113 S. Ct. at 2747; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Mandell v. County of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Schnabel v. Abramson, 232 F.3d at 88; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); Austin v. Ford Models, Inc., 149 F.3d at 152; Stein v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Scaria v. Rubin, 117 F.3d at 654; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 38.

[20/]   See also, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507, 113 S. Ct. at 2747; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 257, 101 S. Ct. at 1096; Terry v. Ashcroft, 336 F.2d at 144 n.17; Austin v. Ford Models, Inc., 149 F.3d at 153; Scaria v. Rubin, 117 F.3d at 654.

Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106.[21]    "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

The Supreme Court in 2000 clarified the standard at this stage of the McDonnell Douglas analysis:

[I]n St. Mary's Honor Center . . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."  In other words, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

In reaching this conclusion, however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."   Moreover, once the employer's justification has been eliminated,

---

[21]    See also, e.g., Raytheon Co. v. Hernandez, 124 S. Ct. at 517 n.3; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 510, 113 S. Ct. at 2749; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093-94; Feingold v. New York, 366 F.3d at 152; Mandell v. County of Suffolk, 316 F.3d at 380-81; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Weinstock v. Columbia Univ., 224 F.3d at 42; Scaria v. Rubin, 117 F.3d at 654.

discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.  Thus, <u>a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated</u>.

  <u>This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability</u>.  Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.  To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

  <u>Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors.  Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law</u>.

<u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis added & citations omitted).

  After <u>Reeves</u>, the Second Circuit has made clear that merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the <u>McDonnell Douglas</u> analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis is necessary:

  In examining the impact of <u>Reeves</u> on our precedents, we conclude that <u>Reeves</u> prevents courts from imposing a <u>per se</u> rule requiring <u>in all instances</u> that a [Title VII] claimant offer more than a prima facie case and evidence of pretext. . . .  But the converse is not true; following <u>Reeves</u>, <u>we decline to hold that no [Title VII] defendant may succeed

on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext.  Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

Schnabel v. Abramson, 232 F.3d at 90 (emphasis added).[22]

Indeed, the Second Circuit and District Court decisions within the Circuit continue to grant summary judgment to defendants in appropriate cases at the final McDonnell Douglas step, even after Reeves.[23]

---

[22]  See also, e.g., Feingold v. New York, 366 F.3d at 152; Roge v. NYP Holdings, Inc., 257 F.3d 164, 167-68 (2d Cir. 2001); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 469-70 (2d Cir.), cert. denied, 534 U.S. 993, 122 S. Ct. 460 (2001); James v. New York Racing Ass'n, 233 F.3d 149, 156-57 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference  of discrimination."); Aksamit v. 772 Park Avenue Corp., 00 Civ. 5520, 2003 WL 22283813 at *6 (S.D.N.Y. Oct. 2, 2003) ("[A] plaintiff's establishment of a prima facie case and rebuttal of a nondiscriminatory reason for the adverse action do not save the plaintiff from summary judgment when there is insufficient evidence of discrimination."), aff'd, 128 Fed. Appx. (2d Cir. 2005); Weiser v. Forest Pharm., Inc., 99 Civ. 1809, 2001 WL 293951 at *7-8 (S.D.N.Y. Mar. 26, 2001); Tanay v. Saint Barnabas Hosp., 99 Civ. 9215, 2001 WL 262695 at *4 (S.D.N.Y. Mar. 15, 2001); Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 245 (S.D.N.Y.), reconsideration denied, 156 F. Supp. 2d 270 (S.D.N.Y. May 18, 2001), aff'd in part, appeal dismissed on other grounds, 51 Fed. Appx. 55 (2d Cir. 2002); Connell v. Consol. Edison Co., 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record – whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence – to support an inference of discrimination.").

[23]  E.g., Molin v. Shapiro, 73 Fed. Appx. 511, 512 (2d Cir. 2003); Silverman v. City of New York, 64 Fed. Appx. 799, 801 (2d Cir. 2003); Tarshis v. Riese Org., 66 Fed. Appx. 238, 240 (2d Cir. 2003); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d at 470; James v. New York Racing Ass'n, 233 F.3d at 157; Slatky v. Healthfirst, Inc., 02 Civ. 5182, 2003 WL 22705123 at *6 (S.D.N.Y. Nov. 17, 2003); Kulkarni v. City Univ. of New York, 01 Civ. 10628, 2002 WL 31886639 at *9 (S.D.N.Y. Dec. 27, 2002); Williams v. NYC Dep't of Sanitation, 00 Civ. 7371, 2001 WL 1154627 at *12-19 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); Gonzalez v. New
(continued...)

**B.     Pozo's Race, National Origin and Religious Discrimination Claims**

Pozo's discrimination claims fall into two categories: (1) allegations that the Hotel Defendants created a hostile work environment based on Pozo's race and national origin; and (2) allegations that the Hotel Defendants did not reasonably accommodate her religious beliefs. Pozo's age discrimination claims against the Hotel Defendants are discussed in Point IV below.

**1.     Pozo's Title VII Claims Against the Individual Defendants Are Dismissed**

It is black letter law in this Circuit that "an individual defendant cannot be held personally liable under Title VII." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 n.8 (2d Cir. 2006); accord, e.g., Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 195 n.2 (2d Cir. 2005); Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).  Pozo conceded at oral argument that Title VII claims cannot be asserted against individual

---

23/     (...continued)
York City Transit Auth., 00 Civ. 4293, 2001 WL 492448 at *12 (S.D.N.Y. May 9, 2001); Weiser v. Forest Pharm., Inc., 2001 WL 293951 at *8; Tanay v. Saint Barnabas Hosp., 2001 WL 262695 at *9; Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d at 249-50; Cobian v. New York City, 2000 WL 1782744 at *13; Austin v. Ford Models, Inc., 2000 WL 1752966 at *12-15; Trezza v. Dilenschneider Group, 99 Civ. 0185, 2000 WL 1702029 at *5-6 (S.D.N.Y. Nov. 14, 2000); Faldetta v. Lockheed Martin Corp., 98 Civ. 2614, 2000 WL 1682759 at *8-11 (S.D.N.Y. Nov. 9, 2000); Chudnovsky v. Prudential Sec., Inc., 98 Civ. 7753, 2000 WL 1576876 at *8 (S.D.N.Y. Oct. 23, 2000), aff'd, 51 Fed. Appx. 901 (2d Cir. 2002); Cousins v. Howell Corp., 113 F. Supp. 2d 262, 268-69 (D. Conn. 2000); Ekwegablu v. Central Parking Sys., 97 Civ. 9477, 2000 WL 1371335 at *3-4 (S.D.N.Y. Sept. 22, 2000); Connell v. Consol. Edison Co., 109 F. Supp. 2d 202, 208-11 (S.D.N.Y. 2000); Lenhoff v. Getty, 97 Civ. 9458, 2000 WL 977900 at *5-6 (S.D.N.Y. July 17, 2000); Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 251 & n.12 (S.D.N.Y. 2000).

defendants.  (See 5/10/07 Oral Arg. Tr. at 19.)  Accordingly, Pozo's Title VII claims against Khan and Ingberman are dismissed.[24]

---

[24]    Pozo also has sued Khan and Ingberman under § 290 of the New York State Human Rights Law ("NYSHRL") and under § 8-107 of the New York City Human Rights Law ("NYCHRL").  (Dkt. No. 23: 1st Am. Compl. ¶ 4.)  The law under the NYSHRL is clear that unless a corporate employee is shown to have any "ownership interest or any power to do more than carry out personnel decisions made by others," the employee cannot be held individually liable under § 296(1) or § 8-107(1).  E.g., Patrowich v. Chemical Bank, 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659, 660 (1984); see also, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995) (citing Patrowich v. Chemical Bank), abrogated on other grounds, Burlington Indus., Inc. v. Ellerton, 524 U.S. 742, 48 S. Ct. 2257 (1998); Hafez v. Avis Rent A Car Sys. Inc., 242 F.3d 365 (table), 2000 WL 1775508 at *3 (2d Cir. Nov. 29, 2000); Curran v. All Waste Sys., Inc., No. 99-9250, 213 F.3d 625 (table), 2000 WL 639999 at *2 (2d Cir. May 16, 2000); Heskin v. Insite Adver., Inc., 03 Civ. 2598, 2005 WL 407646 at *24 (S.D.N.Y. Feb. 22, 2005) (Peck, M.J.); Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003); Farage v. Johnson-McClean Tech., 01 Civ. 4856, 2002 WL 1067824 at *6 (S.D.N.Y. May 29, 2002); Layaou v. Xerox Corp., 298 A.D.2d 921, 922, 748 N.Y.S.2d 85, 85 (4th Dep't 2002); Novak v. Royal Life Ins. Co., 284 A.D.2d 892, 894, 726 N.Y.S.2d 784, 786 (3d Dep't 2001); Brotherson v. Modern Yachts, Inc., 272 A.D.2d 493, 493, 708 N.Y.S.2d 900, 900 (2d Dep't 2000); Trovato v. Air Express Int'l, 238 A.D.2d 333, 334, 655 N.Y.S.2d 656, 657 (2d Dep't 1997).  The NYCHRL, in contrast, provides for liability not only of an employer but also for "an employee or agent thereof."  N.Y.C. Admin. Code § 8-107(1)(a); see, e.g., Heskin v. Insite Adver., Inc., 2005 WL 407646 at *24 n.39; Thomas v. New York City Health & Hosp. Corp., 02 Civ. 5159, 2004 WL 1962074 at *9 (S.D.N.Y. Sept. 2, 2004).

Pozo claims (and the Hotel Defendants dispute) that Khan had the ultimate authority to hire or fire personnel at Riverside (see page 13 above; see also Dkt. No. 66: Pozo Opp. Br. at 7, 36); therefore, Pozo has made sufficient allegations under NYSHRL and NYCHRL to get to the jury on this issue.  Because Ingberman has an ownership interest in J & J (Dkt. No. 48: Rowsell Aff. Ex. R: Ingberman Dep. at 13-22; see also, Pozo Opp. Br. at 7, 36-37), Pozo can assert claims against him under both the NYSHRL and NYCHRL  Therefore, the Court denies summary judgment as to Kahn and Ingberman on Pozo's NYSHRL and NYCHRL claims.

### 2.      Pozo's § 1981 Claim Against Ingberman Is Dismissed

"In order to make out a claim for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action. . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.'" Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004); see also, e.g., Whidbee v. Garzarelli Food Specialities, Inc., 223 F.3d 62, 75 (2d Cir. 2000); Fahmy v. Duane Reade, Inc., 04 Civ. 1798, 2006 WL 1582084 at *12 (S.D.N.Y. June 9, 2006); Isaacs v. City of New York, 04 Civ. 5108, 2005 WL 3466051 at *9 (S.D.N.Y. Dec. 16, 2005); Franchitti v. Bloomberg, L.P., 03 Civ. 7496, 2004 WL 2366183 at *4 (S.D.N.Y. Oct. 20, 2004).   "Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." Patterson v. County of Oneida, 375 F.3d at 229.

Pozo's only allegations regarding Ingberman are: (1) that he signed the Riverside employees' paychecks every week (Dkt. No. 23: 1st Am. Compl. ¶ 21); and (2) that Pozo once complained to Ingberman that she was being assigned too much work and that she wanted Sundays off to attend church, and that Ingberman told her that she would have to speak to Khan about those issues (1st Am. Compl. ¶ 58).  Pozo has not submitted any factual evidence linking Ingberman in any way to her hostile work environment and religious accommodation claims.  Therefore, Pozo's § 1981 claim against Ingberman is dismissed.  On the other hand, Pozo alleges that Khan was directly involved in the actions underlying her hostile work environment and religious

accommodation claims.  Consequently, the Court declines to dismiss Pozo's § 1981 claim against

Khan on this basis.

>    **3.    The Hotel Defendants' Summary Judgment Motion is Denied With Respect to Pozo's Claims of Hostile Work Environment Based on Race and National Origin**

>    To establish a hostile work environment claim, Pozo must show that Khan's conduct

was:

>    "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986)) (internal brackets and quotation marks omitted). The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the workplace. See Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995).  All of the circumstances must be considered; a reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it. See Harris v. Forklift Sys., 510 U.S. 17, 21-23, 114 S. Ct. 367, 370-71 (1993); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995).

Gallagher v. Delaney, 139 F.3d 338, 346-47 (2d Cir. 1998), abrogated on other grounds by,

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998); accord, e.g., Feingold v.

New York, 366 F.3d 138, 149-50 (2d Cir. 2004); Mormol v. Costco Wholesale Corp., 364 F.3d 54,

58 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128, 147-48 (2d Cir. 2003); Alfano v. Costello, 294

F.3d 365, 373-74 (2d Cir. 2002).[25/]  "Conduct that is 'merely offensive' and 'not severe or pervasive

---

[25/]    See also, e.g., Dayes v. Pace Univ., 2 Fed. Appx. 204, 207 (2d Cir. 2001); Whidbee v. Garzarelli Food Specialties, Inc., 223 F. 3d 62, 69-71 (2d Cir. 2000); Howley v. Town of Stratford, 217 F.3d 141, 153-54 (2d Cir. 2000); Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 437-40 (2d Cir. 1999), abrogated on other grounds by, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998); Torres v. Pisano, 116 F.3d 625, 630 (2d Cir.), cert. denied, 522 U.S. 997, 118 S. Ct. 563 (1997); Cosgrove v. Sears, Roebuck
(continued...)

enough to create an objectively hostile or abusive work environment'" is insufficient to establish a Title VII discrimination claim.  Torres v. Pisano, 116 F.3d at 631; accord, e.g., Slaitane v. Sbarro, Inc., 2004 WL 1202315 at *13; Williams v. NYC Dep't of Sanitation, 2001 WL 1154627 at *13; see also, e.g., Dayes v. Pace Univ., 2 Fed. Appx. at 207 (Defendant's "comments and behavior, although boorish and inappropriate, simply do not rise to the level of behavior necessary for a jury reasonably to conclude that they were sufficiently severe or pervasive to alter the condition of [plaintiff]'s employment."). "Thus, harms suffered in the workplace are cognizable under Title VII, even when they are not the result of 'tangible employment actions,' if they arise from conduct (1) that is 'objectively' severe or pervasive – that is, if it creates 'an environment that a reasonable person would find hostile or abusive' [the 'objective' requirement], (2) that the plaintiff 'subjectively perceive[s]' as hostile or abusive [the 'subjective' requirement], and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) [the 'prohibited causal factor' requirement]." Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001) (citations omitted, bracketed material in original).

Isolated incidents of discriminatory comments or conduct is not sufficient to establish a hostile work environment.  E.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct.

---

25/   (...continued)
& Co., 9 F.3d 1033, 1042 (2d Cir. 1993); Slaitane v. Sbarro, Inc., 03 Civ. 5503-04, 2004 WL 1202315 at *12-13 (S.D.N.Y. June 2, 2004) (Peck, M.J.); Viruet v. Citizen Advice Bureau, 01 Civ. 4594, 2002 WL 1880731 at *15 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); Williams v. NYC Dep't of Sanitation, 00 Civ. 7371, 2001 WL 1154627 at *12-13 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); Adeniji v. Admin. for Children Servs., 43 F. Supp. 2d 407, 421 (S.D.N.Y.) (Wood, D.J. & Peck M.J.), aff'd, No. 99-7561, 201 F.3d 430 (table), 1999 WL 1070027 (2d Cir. Nov. 18, 1999).

2275, 2283 (1998) ("'simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); Harris v. Forklift Sys., Inc., 510 U.S. at 21, 114 S. Ct. at 370 ("'mere utterance of an . . . epithet which engenders offensive feelings in an employee,' . . . does not sufficiently affect the conditions of employment to implicate Title VII"); Feingold v. New York, 366 F.3d at 150 ("'As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."'"); Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001) ("'Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275 (1998) (alterations omitted)).[26] "Among the factors [the courts] consider are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes in [the] employee's work performance.'" Feingold v. New York, 366 F.3d at 150 (quoting Harris v. Forklift Sys., Inc., 510 U.S. at 23, 114 S. Ct. at 371); accord, e.g., Mormol v. Costco

---

[26]    See also, e.g., Rizzo-Puccio v. College Auxiliary Servs., Inc., No. 99-9272, 216 F.3d 1073 (table), 2000 WL 777955 at *3 (2d Cir. June 14, 2000) ("[I]solated remarks or occasional episodes of harassment do not constitute a hostile environment within the meaning of Title VII."); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) ("As a general matter, 'isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.'"), abrogated on other grounds by, National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061 (2002); Slaitane v. Sbarro, Inc., 2004 WL 1202315 at *13; Diaz v. Weill Med. Ctr. of Cornell Univ., 02 Civ. 7380, 2004 WL 285947 at *18 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.) (& cases cited therein).

Wholesale Corp., 364 F.3d at 58; Terry v. Ashcroft, 336 F.3d at 148; Slaitane v. Sbarro, Inc., 2004 WL 1202315 at *13.

        The Hotel Defendants argue that Pozo's evidence in this case is too insubstantial for a claim of hostile work environment based on race or national origin.  (Dkt. No. 47: Hotel Defs. Br. at 11.)  However, Pozo asserts that Khan "pepper[ed]" her with insults on a nearly daily basis regarding her inability to speak English well and told her repeatedly to "go back to Cuba," which eventually led to her becoming depressed and anxious.  (See pages 12-13 above).  Pozo also has stated that, in addition to insulting her on a daily basis, Khan ordered her to clean only bathrooms during her weekday shifts, which meant that she would have to clean eighty-four bathrooms per shift, and that Halina, another room attendant who was white, Polish, and had a better English proficiency than Pozo, was allowed to clean only bedrooms during weekday shifts, which was the more desirable assignment.  (See page 12 above.)  This work was clearly more than her initial complement of twenty-eight bathrooms and fifteen bedrooms per shift.  (See page 3 above.)  The Hotel Defendants dispute these claims.  (See page 5 above.)  Because a reasonable jury could find that Khan's treatment of Pozo was objectively severe, that Pozo perceived this treatment as hostile toward her, and that Khan was treating her that way because of her race or national origin, the Hotel Defendants are not entitled to summary judgment on Pozo's hostile work environment claim.

        **4.**      **The Hotel Defendants' Summary Judgment Motion is Denied With Respect to Pozo's Religious Accommodation Claims**

        "Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., prohibits discrimination in employment on the basis of religion.  Specifically, an employer may not 'fail or

refuse to hire or . . . discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." <u>Baker</u> v. <u>Home Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006).[27/]   "Title VII provides that '[t]he term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." <u>Baker</u> v. <u>Home Depot</u>, 445 F.3d at 546 (quoting 42 U.S.C. § 2000e(j)).   "In brief, it is 'an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." <u>Baker</u> v. <u>Home Depot</u>, 445 F.3d at 546 (quoting <u>Trans World Airlines, Inc.</u> v. <u>Hardison</u>, 432 U.S. 63, 74, 97 S. Ct. 2264, 2271-72 (1977)).

      "[P]laintiffs who seek to make out a prima facie case of religious discrimination must show that '(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." <u>Baker</u> v. <u>Home Depot</u>, 445 F.3d at 546.[28/]   "Once a prima facie case is established by the employee, the employer 'must offer [him or her] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." <u>Baker</u> v.

---

[27/]    <u>Accord</u>, <u>e.g.</u>, 42 U.S.C. § 2000e-2(a)(1); <u>Cosme</u> v. <u>Henderson</u>, 287 F.3d 152, 157 (2d Cir. 2002); <u>Knight</u> v. <u>Conn. Dep't of Pub. Health</u>, 275 F.3d 156, 167 (2d Cir. 2001).

[28/]    <u>Accord</u>, <u>e.g.</u>, <u>Cosme</u> v. <u>Henderson</u>, 287 F.3d at 158; <u>Knight</u> v. <u>Conn. Dep't of Pub. Health</u>, 275 F.3d at 167; <u>Khan</u> v. <u>Fed. Reserve Bank</u>, 02 Civ. 8893, 2005 WL 273027 at *5 (S.D.N.Y. Feb. 2, 2005).

Home Depot, 445 F.3d at 546; accord, e.g., Knight v. Conn. Dep't of Pub. Health, 275 F.3d at 167. "Nevertheless, to avoid Title VII liability, the employer need not offer the accommodation the employee prefers.  Instead, when any reasonable accommodation is provided, the statutory inquiry ends."  Cosme v. Henderson, 287 F.3d at 158.

   Here, a reasonable jury could find that Pozo has established the minimum of a prima facie case.  Pozo was baptized in the Catholic Church and has attended Sunday mass at her Catholic parish in Staten Island for approximately twenty-five years. (Dkt. No. 63: Pozo Aff. ¶¶ 22-23.)  Pozo believes that attending Sunday mass is part of her duty of being a Catholic.  (Pozo Aff. ¶ 24.) Defendants question the sincerity of Pozo's beliefs, suggesting that because she cannot identify all of the elements of a Catholic mass and because she mentioned on other occasions that one reason she would like to be home on the weekends was to be home with her husband, she is not a devout Catholic.  (See Dkt. No. 47: Hotel Defs. Br. at 16-17.)   However, Pozo's affidavit explaining the importance of her Catholic faith to her is sufficient evidence to create at least a jury question as to the validity of her beliefs, and thus establish the first prong of the prima facie case for summary judgment purposes.

   Pozo also has adequately alleged that she informed Riverside of her religious belief. Beginning in March 2002, Pozo asked Khan multiple times to give her at least one Sunday off per month so that she could attend religious services at her Catholic parish in Staten Island.  (See pages 9-10 above.) The Hotel Defendants do not dispute these allegations.  Pozo therefore has established the second prong of the prima facie case.

As to the third prong, Pozo argues that she was disciplined in the sense that she "was given [the] choice of either complying [with Riverside's demand that she work on Sundays] or risk[] loss of her job."  (Dkt. No. 66: Pozo Br. at 23.)  In response, the Hotel Defendants make the extremely flimsy, unsupported, one-sentence argument that Pozo was "never disciplined" by Khan. (See Hotel Defs. Br. at 16.)  However, the Hotel Defendants neglect to address Southern District case law, which suggests that it is not necessary for a plaintiff to allege that he or she was disciplined in the traditional sense at their workplace in order to establish the third prong.  Instead, as the Court stated in Khan v. Fed. Reserve Bank, "an employee faced with an employer's refusal to accommodate is not required to violate employment rules and suffer the consequences before she is able to bring suit.  Rather, the threat of an adverse action is sufficient to meet this element of the prima facie case, provided that the plaintiff can prove that the employer is in fact intransigent and that the threatened action is causally related to the conflict between the employer's policy and the plaintiff's religion." Khan v. Fed. Reserve Bank, 2005 WL 273027 at *5 (citing cases); see also cases cited in the next paragraph.  At oral argument, the Hotel Defendants conceded that the threat of discipline is sufficient to satisfy the third prong.  (See 5/10/07 Oral Arg. Tr. at 36.)

Pozo has adequately alleged that she was threatened with an adverse employment action.  Pozo stated that for over four years, she did not take off work on Sunday mornings to attend mass in her parish because she "dared not defy [Khan] and risk being fired."  (Pozo Aff. ¶ 27.) Pozo's has sufficiently established the third prong of a prima facie case so as to avoid summary judgment.  See, e.g., Opuku-Boateng v. California, 95 F.3d 1461, 1467 n.9 (9th Cir. 1996) ("The employee need not be penalized with discharge to establish a prima facie case."), cert. denied, 520

U.S. 1228, 117 S. Ct. 1819 (1997); EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 614 n.5 (9th Cir. 1988) ("We note that although we have occasionally used language implying that the employer must discharge the employee because of the conflict, we have never in fact required that the employee's penalty for observing his or her faith be so drastic. The threat of discharge (or of other adverse employment practices) is a sufficient penalty.") (emphasis in original, citations omitted), cert. denied, 489 U.S. 1077, 109 S. Ct. 1527 (1989); Reznick v. Aramark Corp., No. 97-CV-18977, 1999 WL 287724 at *10 (E.D.N.Y. May 5, 1999) (employee must have "faced discipline for failing to comply with the conflicting employment requirement" to establish the third prong); Rodriguez v. City of Chicago, No. 95 C 5371, 1996 WL 22964 at *3 (N.D. Ill. Jan 12, 1996) (finding the threat of discharge sufficient to establish third prong, and noting that "[i]t is nonsensical to suggest that an employee who, when forced by his employer to choose between his job and his faith, elects to avoid potential financial and/or professional damage by acceding to his employer's religiously objectionable demands has not been the victim of religious discrimination: 'An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy.'").

The evidence is disputed as to whether (and when) the Hotel Defendants offered Pozo a reasonable accommodation when she requested at least one Sunday off per month to attend mass. Even if seniority precluded accommodation when Pozo and Halina were the only room attendants, Pozo states that beginning in 2005, there were other room attendants with less seniority than her. (See page 10 above.) Pozo stated that in 2006, Khan told her that she could have four hours off on Sundays to attend a Catholic mass, but only if she attended the mass in Manhattan, and that Khan

suggested that she get a letter from her priest in order to do so.  (See page 10 above.)  While the Hotel Defendants claim in their brief that Pozo could have worked her shift after going to church, there is no evidence in the summary judgment record to support that claim.  The Hotel Defendants also claim that once this lawsuit was initiated in April 2006, Khan offered Pozo one Sunday off per month to attend church. (See page 11 above.)  The Hotel Defendants also submitted a memorandum Khan wrote to Pozo in February 2006 suggesting that she could reorganize her schedule so that she could have Thursdays and Sundays as her days off.  (See page 11 above.)  However, at least for the period before these offers were made (and possibly after), Pozo has presented sufficient disputed evidence to overcome the Hotel Defendants' summary judgment motion.  See, e.g., Cosme v. Henderson, 287 F.3d at 158 ("Of course, if the offers [of accommodation] were not timely made, then questions as to whether they were 'reasonable' would become secondary and possibly irrelevant.").  The Hotel Defendants have not submitted any evidence that, for example, allowing Pozo to shift her schedule on Sundays so that she could attend church before coming to work, would be an undue hardship.  Compare, e.g., Baker v. Home Depot, 445 F.3d at 547 (allowing employee to work on Sunday afternoon or evening would allow opportunity to attend religious services).

The Court denies the Hotel Defendants' summary judgment motion on Pozo's religious accommodation claim because disputed issues of material fact exist.

## IV.  DEFENDANTS ARE GRANTED SUMMARY JUDGMENT WITH RESPECT TO POZO'S AGE DISCRIMINATION CLAIMS

Pozo's EEOC complaints listed race, national origin, and religious discrimination, but did not list age discrimination.  (See page 15 above.)

"Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC. . . ."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001); see also, e.g., 42 U.S.C. § 2000e-5(e) & (f); 29 U.S.C. § 626(d);  Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 613 (2d Cir. 1999); Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208 (2d Cir. 1993).  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d at 686; Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000); Malarkey v. Texaco, Inc., 983 F.2d at 1208.[29]

The Second Circuit recognizes, however, that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d at 614; see also, e.g., Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d at 686; Malarkey v. Texaco, Inc., 983 F.2d 1208-09.  The Second Circuit has "recognized three situations in which claims not raised in an EEO charge are 'sufficiently related to the allegations in the charge that it would be unfair to civil

---

[29]    "Unlike Title VII, the ADEA does not require an aggrieved party to receive a right-to sue letter from the EEOC before filing suit in federal court."  Holowecki v. Fed. Express Corp., 440 F.3d 558, 563 (2d Cir. 2006).  Instead, "ADEA plaintiffs need only wait 60 days after filing the EEOC charge." Hodge v. N.Y. Coll. of Podiatric Med., 157 F.3d 164, 168 (2d Cir. 1998); see also e.g., Holowecki v. Fed. Express Corp., 440 F.3d at 563.  "However, in the event that the EEOC issues a right-to sue letter to an ADEA claimant, the claimant must file her federal suit within 90 days after receipt of the letter."  Holowecki v. Fed. Express Corp., 440 F.3d at 563; see also 29 U.S.C. § 626(e).  Because Pozo did not make an ADEA claim to the EEOC prior to filing this case, the fact that she received a right-to-sue letter on her other discrimination claims does not save her age discrimination claim.

rights plaintiffs to bar such claims in a civil action': 1) where 'the conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"'; 2) where the complaint is 'one alleging retaliation by an employer against an employee for filing an EEOC charge'; and 3) where the complaint 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003); see also, e.g., Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d at 686; Hassan v. NYC Off Track Betting Corp., 05 Civ. 9677, 2007 WL 678422 at *3 (S.D.N.Y. Mar. 6, 2007).

None of these elements is present in the instant case. Pozo's' EEOC complaint could not be clearer: she only alleged race, national origin, and religious discrimination. (See page 15 above.) At oral argument, Pozo conceded that defendants are entitled to summary judgment on her age discrimination claim because she did not raise that claim before the EEOC. (See 5/10/07 Oral Arg. Tr. at 20.) Therefore, summary judgment is granted as to all defendants with respect to Pozo's age discrimination claims. See, e.g., Sotolongo v. New York City Transit Auth., No. 99-9195, 216 F.3d 1073 (table), 2000 WL 777958 at *3 (2d Cir. June 15, 2000) (ADA claim dismissed where plaintiff only asserted Title VII and ADEA claims in EEOC charge, and ADA claim was not reasonably related to other claims cited in EEOC charge); Hassan v. NYC Off Track Betting Corp., 2007 WL 678422 at *3 (dismissing ADEA and ADA claims where plaintiff asserted only Title VII claim in his EEOC charge); Punsal v. Mount Sinai Servs. of the Mount Sinai Sch. of Med., 01 Civ. 5410, 2004 WL 736892 at *5 (S.D.N.Y. Apr. 6, 2004) (age discrimination claim dismissed where plaintiff only asserted national origin discrimination in SDHR/EEOC complaint, and age

discrimination claim was not reasonably related to national origin discrimination claim); Joseph v.

Am. Works, Inc., 01 Civ. 8287, 2002 WL 1033833 at *5-6 (S.D.N.Y. May 21, 2002) (ADA claim

dismissed where plaintiff only asserted Title VII claims in her EEOC complaint, and ADA claim was

not reasonably related to Title VII claims).

## V.    THE UNION IS GRANTED SUMMARY JUDGMENT ON POZO'S BREACH OF THE DUTY OF FAIR REPRESENTATION CLAIMS RELATING TO HER DISCRIMINATION CLAIMS BECAUSE THEY ARE TIME-BARRED

Pozo also brought a breach of the duty of fair representation claim against the Union

for failure "to properly represent her in pursuing her complaints of discrimination against the Hotel

Defendants." (Dkt. No. 23: 1st Am. Compl. ¶ 3.)  A breach of the duty of fair representation claim

is subject to a six month statute of limitations.  Eatz v. DME Unit of Local Union No. 3, 794 F.2d

29, 33 (2d Cir. 1986).[30]  "A cause of action based on the duty of fair representation accrues when

the union members know or reasonably should know that a breach of that duty has occurred."  Eatz

v. DME Unit of Local Union No. 3, 794 F.2d at 33.[31]  "Once a plaintiff learns of his union's breach

of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs

---

[30]    See also, e.g., Larue v. N.Y. City Off-Track Betting Corp., 03 Civ. 0783, 2004 WL 2793195 at *8 (S.D.N.Y. Dec. 6, 2004); Williams v. Local 1199, Drug Hosp. Union, 97 Civ. 9200, 1999 WL 435152 at *3 (S.D.N.Y. June 24, 1999); Waterman v. Transp. Workers' Union Local 100, 8 F. Supp. 2d 363, 368 (S.D.N.Y. 1998) ("Though DelCostello involved a hybrid suit, courts in this circuit have uniformly read this decision to require that the § 10(b) six-month limitations period also be applied to unfair representation claims alone."), aff'd, 176 F.3d 150 (2d Cir. 1999).

[31]    See also, e.g., Larue v. N.Y. City Off-Track Betting Corp., 2004 WL 2793195 at *8; Williams v. Local 1199, Drug Hospital Union, 1999 WL 435152 at *3; Waterman v. Transp. Workers' Union Local 100, 8 F. Supp. 2d at 368.

'cannot be treated as a continuing violation . . . of the limitations period.'" Buttry v. Gen. Signal Corp., 68 F.3d 1488, 1492 (2d Cir. 1995).[32]

   As to the Union's duty to fairly represent Pozo regarding her religious discrimination claim, Pozo alleges that the most recent time she raised with the Union the subject of Khan's refusal to allow her to have Sunday's off to go to mass was in a meeting with Rygor in January 2004.  (See page 10 above.) Pozo alleges that the most recent time she raised with the Union the subject of a hostile work environment based on national origin, race, or age was during that same January 2004 meeting.  (See page 13 above.)  Pozo alleges that she also wrote a letter to Union President John Hickey in November 2004 about the harassment.  (See page 13 above.)  Pozo claims that both Rygor and Hickey never addressed these complaints.  (See pages 10, 13 above.)  Therefore, Pozo's cause of action for breach of the duty of fair representation against the Union accrued sometime in 2004, or at the very latest, during the first quarter of 2005, when she realized that the Union was not going to assist her with these claims.  Pozo did not file suit in this case until January 9, 2006 (Dkt. No. 2: Compl.), well after six months of the accrual of these claims.  Therefore Pozo's breach of the duty of fair representation claims against the Union regarding her discrimination claims are time-barred.  Consequently, the Court grants the Union summary judgment on these claims.

---

[32]  See also, e.g., Heller v. Consol. Rail Corp., No. 3:05-CV-1581, 2007 WL 607392 at *4 (N.D.N.Y. Feb. 20, 2007); Hussein v. Sheraton N.Y. Hotel, 100 F. Supp. 2d 203, 207 (S.D.N.Y. 2000).

## CONCLUSION

For the reasons set forth above, the Court GRANTS summary judgment on the following claims: (1) Pozo's hybrid section 301/fair representation claims; (2) Pozo's Title VII claims against the individual defendants; (3) Pozo's § 1981 claim against Ingberman; (4) Pozo's age discrimination claims; and (5) Pozo's duty of fair representation claims against the Union.

The Court DENIES summary judgment on the following claims: (1) Pozo's Title VII religious accommodation and race/national origin hostile work environment claims against Riverside and J & J; (2) Pozo's NYSHRL and NYCHRL religious accommodation and race/national origin hostile work environment claims against Riverside, J & J, Khan and Ingberman; and (3) Pozo's § 1981 religious accommodation and race/national origin hostile work environment claims against Riverside, J & J, and Khan.

## SCHEDULING

The Joint Proposed Pretrial Order is due June 20, 2007 (to allow the parties time to try to settle the case). In light of the death of Judge Casey, the parties shall confer and promptly notify me (and Judge Casey's chambers) whether they wish to consent to trial before me pursuant to 28 U.S.C. § 636(c).

DATED:    New York, New York
           May 10, 2007

                                      **Andrew J. Peck**
                                      United States Magistrate Judge

Copies to:    Joshua F. Nesson, Esq.
                Jamie A. Rowsell, Esq.
                Richard M. Howard, Esq.
                Kent Y. Hirozawa, Esq.
                Barry N. Saltzman, Esq.
                Chambers of the Hon. Richard C. Casey